**CUPP et al., Appellants,**

v.

**KUDLA et al., Appellees.**

[Cite as *Cupp v. Kudla,* 158 Ohio App.3d 728, 2004-Ohio-5528.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 2003 MA 0051.

Decided Oct. 8, 2004.

Ilan Wexler, for appellants.

Craig G. Pelini, for appellees.

FORD, Presiding Judge.

{¶ 1} The instant appeal stems from two final judgments of the Mahoning County Court of Common Pleas. In the first judgment, the court found in favor

of appellees, Gregory S. Kudla and Baker Vehicle Systems, on both claims for relief of appellants, Martha and William Cupp. In the second, the court rejected appellants' arguments that certain errors had occurred during the underlying proceedings and overruled their motion for a new trial.

{¶ 2} The subject matter of this action is a motor vehicle accident that took place at the intersection of State Route 224 and Golf Drive in Boardman, Ohio. State Route 224 is a congested thoroughfare in which the two eastbound lanes are separated from the two westbound lanes by a center-turn lane. Golf Drive is a two-lane road that approaches State Route 224 only from the north and initially intersects with the two westbound lanes of the highway. At the resulting T intersection, there is no traffic light, and only the vehicles on Golf Drive are required to stop. Accordingly, the vehicles traveling west on State Route 224 have the right of way through the intersection, and the vehicles on Golf Drive must wait for a lull in the traffic on 224 before they can enter the intersection.

{¶ 3} At approximately 10:00 a.m. on June 25, 1997, William Cupp was riding a bicycle on a strip of pavement that, although connected to the area of the road upon which the westbound traffic on State Route 224 is intended to travel, is located directly north of the outer white edge line of the westbound lanes and is approximately nine feet wide. William's bicycle was proceeding east on the strip of pavement, meaning that he was going against the flow of the traffic in the westbound lanes.

{¶ 4} As William was approaching the intersection from the west, a vehicle driven by Gregory Kudla was sitting on Golf Drive directly adjacent to the stop sign at the edge of the intersection. At that moment, Kudla was acting within the scope of his employment with Baker Vehicle Systems, having just completed maintenance on the carts of the adjacent golf course. Since Kudla was intending to turn right onto State Route 224, he was concentrating on the traffic coming from the east, which was the opposite direction from which William was approaching.

{¶ 5} When William arrived at the intersection, he tried to look into Kudla's vehicle and make eye contact so that Kudla would recognize that he intended to proceed in front of Kudla's vehicle. Despite the fact that he was not able to make eye contact with Kudla, William still rode his bicycle in front of Kudla because the vehicle was not moving and there was oncoming traffic on the westbound lanes of State Route 224. When William's bicycle reached the point at which he was ready to begin to turn left onto Golf Drive, Kudla's vehicle came forward with sufficient speed to flip William and his bicycle up into the air. William landed on his back in the outside lane for the westbound traffic on State Route 224.

{¶ 6} In the months after the accident, William began to experience problems with his left knee, which ultimately required surgery to rebuild certain bones in that area. As a result of this surgery, William had to walk on crutches for approximately ten weeks and was unable to work for a substantial period. In addition, the problems with William's left knee later caused him to aggravate a pre-existing condition in his right knee.

{¶ 7} In May 1998, William and his wife, Martha Cupp, brought the instant case against Kudla and his employer, Baker Vehicle Systems. As the primary allegation in support of their complaint, William and Martha, appellants, asserted that Kudla had been negligent in failing to yield to William. Under their first claim for relief, appellants sought compensatory damages for the various forms of harm William had suffered, including his medical bills and lost wages. Under their second claim, they sought damages for the loss of consortium Martha had suffered as a result of William's injuries.

{¶ 8} After answering the complaint and conducting preliminary discovery, Kudla and Baker Vehicle Systems, appellees, moved the trial court for partial summary judgment on the question of whether William had acted negligently in operating his bicycle against the flow of traffic. Specifically, appellees argued that because the strip of pavement upon which William was riding is considered part of the roadway of State Route 224, he was required to ride his bicycle in the same manner as the motor vehicles using that part of the road; i.e., according to appellees, in order to properly ride his bicycle on the strip of pavement directly adjacent to the two westbound lanes, William also had to go with the flow of the westbound traffic. Once appellants had filed a response on the matter, the trial court issued a judgment in which it overruled the motion for summary judgment.

{¶ 9} A three-day jury trial was eventually held in November 2002. In addition to their own testimony, appellants presented the testimony of their two sons and the primary doctor who had treated William for his knees. In response, appellees submitted the testimony of the Boardman Township police officer who had investigated the underlying accident. As part of his testimony, the police officer was allowed to state his opinion as to whether William had violated the applicable traffic laws in riding his bicycle against the flow of traffic on the strip of pavement directly adjacent to the westbound lanes.

{¶ 10} In instructing the jury at the conclusion of the trial, the trial court stated that if a person is riding a bicycle on the roadway portion of a state highway, he is required to ride on the far right side of the highway and cannot go against the flow of traffic. The trial court also gave the jury the statutory definition for the term "roadway" and then expressly stated that under this definition, the paved portion of the highway directly adjacent to the outer white edge line is part of the roadway. In addition, the trial court instructed the jury

that William could be found negligent if he failed to employ the care of a reasonable person in protecting his own safety.

{¶ 11} In returning its verdict in favor of appellees as to appellants' entire complaint, the jury was required to respond to certain interrogatories. In the first two interrogatories, a majority of the jury expressly found that Kudla had acted negligently and that his negligence had been a proximate cause of the accident. However, in the following two interrogatories, the entire jury further found that William's own negligence had been a proximate cause of the accident. Finally, in its comparative-negligence analysis in the last interrogatory, a majority of the jury attributed 75 percent of the fault for the accident to William and the remaining 25 percent to Kudla.

{¶ 12} After the trial court had entered judgment based upon the jury verdict, appellants moved for a new trial under Civ.R. 59. As the primary basis for their motion, appellants challenged the propriety of the trial court's instruction concerning what constituted the roadway for purposes of determining whether William was riding on the road lawfully prior to the accident. They also argued that the trial court had erred in allowing the investigating officer to state his opinion as to whether William had been operating his bicycle lawfully. Once appellees had submitted their brief in opposition, the trial court issued a separate judgment overruling the request for a new trial.

{¶ 13} In now appealing both the judgment on the jury verdict and the judgment on their new trial motion, appellants have assigned the following as error:

{¶ 14} "The court erred when it denied appellants' motion for new trial on the basis that improper and erroneous jury instructions were given to the jury.

{¶ 15} "The trial court committed reversible error when it allowed a police officer to render opinions on an issue of law."

{¶ 16} Under their first assignment, appellants essentially maintain that the trial court did not properly interpret the statutory definition of the term "roadway" when it instructed the jury on the underlying law in the case. As was noted above, the trial court instructed the jury that any paved area beyond the outer white edge line must be considered part of the "roadway" under the statutory definition. Appellants now contend that the trial court should have told the jury that the strip of pavement to the right of the white edge line was actually the shoulder or berm of the highway and accordingly could not be viewed as part of the roadway. They further contend that if the trial court had interpreted the statutory definition in a correct manner, the jury would not have found that William had been negligent in the operation of his bicycle prior to the accident.

{¶ 17} As both sides correctly note, the operation of a bicycle upon a state highway is governed by R.C. 4511.55(A). This statute provides that any person riding a bicycle "upon a roadway" is required to stay "as near to the right side of the roadway as practicable obeying all traffic rules applicable to vehicles." In turn, R.C. 4511.01(EE) defines the word "roadway" to consist of "that portion of a highway improved, designed, or ordinarily used for vehicular travel, except the berm or shoulder."

{¶ 18} In challenging the trial court's jury instruction on this point, appellants assert that the requirements of R.C. 4511.55(A) were not applicable to William because he was not riding upon the roadway. Specifically, they assert that, pursuant to R.C. 4511.01(EE), the strip of pavement upon which William was riding constituted the berm or shoulder of State Route 224 because it was situated to the right of the outer edge line. In response, appellees argue that the strip of pavement in dispute was part of the roadway because the statutory definition refers to the "improved" portion of the highway and the berm or shoulder of State Route 224 consisted solely of the gravel area that was located beyond the edge of the pavement.

{¶ 19} Precedent on this particular point appears to support appellees' position. In *Sech v. Rogers* (1983), 6 Ohio St.3d 462, 6 OBR 515, 453 N.E.2d 705, the issue before the Ohio Supreme Court concerned the correctness of the trial court's jury instructions on whether the defendant had had the right of way prior to the accident. As part of the contested instructions in *Sech,* the trial court essentially told the jury that the defendant would have had the right of way if she had been operating her vehicle upon the roadway. After then quoting the statutory definition of "roadway," the trial court stated that the roadway would consist of any hard surface of the highway. When the trial court was asked to clarify this point, the *Sech* trial court also stated: " '[T]he hard surface of the highway, to me, hard is paved, so quote, it is the paved surface of the highway that we are talking about, not the gravel, if any, or grass, if any, or what was commonly referred to in the book as berm * * *.' " Id. at 464–465, 6 OBR 515, 453 N.E.2d 705.

{¶ 20} Before the Supreme Court, the *Sech* plaintiff argued that the disputed instruction was erroneous because the statutory definition of "roadway" could not include the paved portion of the highway that was located beyond the outer white edge line. In rejecting this argument, the Supreme Court concluded that the disputed instruction was proper because it was based on the relevant statutory definitions, including R.C. 4511.01(EE). In addition, the *Sech* court held that even if the disputed instruction was improper, the plaintiff had not been preju-diced because the jury had rejected her evidence as to what had occurred prior to the accident. The foregoing analysis was adopted by five members of the

Supreme Court, while two of the justices dissented on the specific basis that the trial court had given an erroneous instruction concerning the extent of the roadway under the statutory definition.

{¶ 21} In the years since the issuance of the *Sech* decision in 1983, the Supreme Court has not had the opportunity to readdress the question of what constitutes the roadway under R.C. 4511.01(EE). Accordingly, the appellate districts of this state have had the task of interpreting the Supreme Court's analysis on that point. In doing so, at least one appellate district has chosen not to follow the majority analysis in *Sech*. In *Siders v. Reynoldsburg School Dist.* (1994), 99 Ohio App.3d 173, 650 N.E.2d 150, the Tenth Appellate District concluded that the reasoning of the majority opinion in *Sech* was not binding because that opinion did not expressly consider the issue of whether the paved area to the right of the outer white edge line should be considered as part of the berm. Based upon this ambiguity, the *Siders* court chose to follow the analysis of the dissenting opinion in *Sech*.

{¶ 22} After again reviewing the majority opinion in *Sech*, this court holds that the *Siders* court's interpretation of that opinion is unpersuasive. Although the *Sech* majority did not directly state what would constitute the berm of a highway under the *Sech* trial court's interpretation of R.C. 4511.01(EE), the answer to that question logically follows from the manner in which the term roadway is defined. That is, since the *Sech* majority agreed with the *Sech* trial court's conclusion that any paved area directly adjacent to the outer white edge line must be viewed as part of the "roadway," it must follow that the berm of a highway begins at that point where the pavement ends. To this extent, it would have been redundant for the *Sech* majority to have addressed the issue of what constituted the berm of a highway.

{¶ 23} Furthermore, the fact that the *Sech* majority also engaged in a "harmless error" analysis does not affect the value of the "roadway" analysis as binding precedent. If the *Sech* majority had intended not to set precedent on the "roadway" issue, it simply could have provided no analysis on that point and based its entire decision on the conclusion that any error in the disputed jury instruction was not prejudicial. Instead, the majority fully quoted the disputed instruction and then concluded that it was consistent with the statutory definition. Under those circumstances, the majority opinion cannot be ignored in favor of the dissent.

{¶ 24} In some respects, the *Siders* court's decision to disregard the *Sech* majority on the "roadway" issue appears to have been based on the fact that the *Sech* majority did not engage in any statutory interpretation of R.C. 4511.01(EE). However, regardless of the type of analysis the Supreme Court decides to employ, its holding still constitutes binding precedent. As a result, this court

concludes that for purposes of determining whether a rider of a bicycle has complied with R.C. 4511.55(A), the term "roadway" must be interpreted in accordance with the majority opinion in *Sech.*

{¶ 25} Nevertheless, in relation to the final merits of the first assignment, we ultimately hold that it is unnecessary for us to decide whether the trial court's jury instructions on the "roadway" issue were legally correct. This holding is predicated on the fact that the trial court instructed the jury that William could be found to have acted negligently on a number of different grounds. Despite this fact, the submitted interrogatories did not require the jury to state the basis for its finding of negligence. Accordingly, the two-issue rule concerning the proper interpretation of a jury verdict must be applied in this instance.

{¶ 26} In addition to the instruction concerning the requirement that a bicycle be ridden on the far right side of the roadway, the trial court also told the jury that William could be found negligent if "he failed to use the care for his own safety which a reasonably careful person would use under the same or similar circumstances." This instruction clearly set forth a separate ground for finding William negligent that was not related to the "roadway" issue. That is, a finding of negligence on the basis of reasonable care was not dependent on the finding concerning his possible negligence for operating his bicycle on the strip of pavement directly adjacent to the outer edge line. Furthermore, there was clearly some evidence before the jury upon which it could have based its finding of negligence as to William solely on the basis that he had failed to use reasonable care immediately prior to the accident.

{¶ 27} Even though the jury instructions contained the "reasonable care" basis and other separate grounds for finding William negligent, the jury was not asked in the submitted interrogatories to indicate the actual reason for its finding. Therefore, we cannot determine whether any alleged error in the "roadway" instruction was prejudicial to appellants because the jury's determination as to William's negligence could have been based solely upon a separate and independent reason.

{¶ 28} Under the two-issue rule, an alleged error in a jury instruction will be deemed to have been harmless when the jury verdict could have been rendered on multiple bases. The two-issue rule is applicable when (1) the case involves multiple clams or defenses that raise separate and distinct issues, (2) the jury returns a general verdict, and (3) the logic of the jury is not tested by special interrogatories that indicate how the jury resolved the separate issues. *Earl Evans Chevrolet, Inc. v. Gen. Motors Corp.* (1991), 74 Ohio App.3d 266, 273, 598 N.E.2d 1187.

{¶ 29} In the instant case, the trial court's jury instructions set forth different concepts of negligence that gave the trier of fact distinct reasons for finding against appellants in light of the evidence. Under those circumstances, appellants should have requested the trial court to submit additional interrogatories to determine the underlying reason for the verdict. Since such a request was not made, appellants cannot show any prejudice as to the "roadway" instruction. Thus, the first assignment in this appeal lacks merit.

{¶ 30} Under their next assignment, appellants state that the trial court erred in allowing appellees to present certain testimony during the direct examination of the police officer who conducted the investigation of the accident. Specifically, they submit that the trial court should not have permitted the police officer to respond to two questions that were intended to elicit his opinion as to whether William had acted in accordance with the applicable state statutes governing the operation of his bicycle. Appellants contend that the questions were improper because they essentially allowed the police officer to state a legal opinion concerning how the applicable statutes should be interpreted in this particular case.

{¶ 31} At the outset of his direct testimony in behalf of appellees, the police officer stated the nature of his duties with Boardman Township and his basic qualifications for the position. The officer next described the investigation he performed regarding the accident. After then briefly describing the accident, the officer was asked the following two questions by counsel for appellees:

{¶ 32} "Q. Now, sir, based upon your experience, 12 years, the fact that you've investigated 6,000 accidents, the fact that you were called to investigate this accident, did, in fact, investigate this accident, do you have an opinion as to whether—do you know, where is the proper place for a bicyclist to be operating as he or she is operating a bicycle on the paved, improved portion of a roadway?

{¶ 33} "* * *

{¶ 34} "Q. Do you have an opinion based upon all the same factors that you gave before as to which of those two individuals, one on a bike, one in a van, had the right-of-way?"

{¶ 35} After each of the foregoing questions had been asked, appellants' counsel made a general objection. In both instances, the trial court overruled the objection and then allowed the police officer to answer. Regarding the first question, the officer stated that a bicyclist is required under these circumstances to ride the bike in the same direction as the flow of traffic. In relation to the second question, the officer stated that Kudla, as the operator of the van, had the right of way in light of the specific facts he had discovered during his investigation.

{¶ 36} Although appellants did not provide any basis for their objections at trial, they did argue in their motion for a new trial that the questions had been improper because they allowed the police officer to interpret the relevant statutory law and state a conclusion on a purely legal matter. On this point, there is precedent for the proposition that an expert witness cannot state an opinion that is tantamount to a conclusion of law because such testimony conflicts with the authority of the trial court to set forth the law for the jury. *Hoeffel v. Henry Cty. Bd. of Commrs.* (Sept. 16, 1996), 3d Dist. No. 7–95–9, 1996 WL 518115. On the other hand, it is also well established under Ohio law that expert testimony is admissible if it will aid the jury in understanding the evidence or determining a factual issue. Evid.R. 702; *Lambert v. Shearer* (1992), 84 Ohio App.3d 266, 275, 616 N.E.2d 965.

{¶ 37} In this instance, this court agrees that neither of the two disputed questions was stated in the most artful manner. Nevertheless, our review of the general tenor of both questions readily indicates that appellees' counsel was not asking the police officer to give a general statement of the law concerning the proper operation of a bicycle and when a bicyclist has the right of way. Instead, appellees' counsel was trying to elicit the police officer's opinion, based on his investigation of scene as well as his knowledge and experience in investigating traffic accidents, as to whether William had been riding his bicycle in a lawful manner immediately prior to the incident. Since the issue of whether William properly operated his bicycle involved a factual determination, it follows that the police officer's responses to the two disputed questions were admissible under Evid.R. 702.

{¶ 38} For example, the first disputed question pertained to the issue of how a bicyclist should ride his bike when he is on the paved portion of a highway. Obviously, the final resolution of this specific issue fell within the province of the jury in this instance; i.e., it was for the jury to decide whether William had acted lawfully or negligently while he was riding his bike on the strip of pavement to the right of the outer edge line. To this extent, the issue of whether William was riding in the proper manner constituted a factual question that the jury had to resolve in light of the applicable law. As a result, the opinion of the police officer on this point was admissible as expert testimony because, if the jury found the testimony to be credible, it would assist them in understanding the underlying facts and then resolving the factual dispute.

{¶ 39} As an aside, this court emphasizes that it would have been preferable for appellees' counsel to have framed the first question in terms of William himself, instead of referring to any bicyclist. However, the trial transcript shows that in objecting to this particular question, appellants did not challenge the form of the question. Under these circumstances, the trial court did not err in allowing the police officer to answer the first question without requiring appellees' counsel to

reframe the question in an appropriate manner. Furthermore, we note that the second disputed question was framed in terms of William and Kudla specifically.

{¶ 40} Finally, the trial transcript before us readily shows that a proper foundation for the police officer's testimony as an expert witness was established before the two disputed questions were asked and answered. As part of his direct examination, the officer stated that prior to his employment with Boardman Township, he had received a degree in criminal justice from Youngstown State University and had attended the police academy. He further testified that during his 12 years with the township, he had not only received approximately 180 hours of instruction in automobile accident reconstruction but had also actually investigated over 6,000 accidents. Therefore, the police officer was properly qualified to testify as an expert under Evid. R. 702. See *State v. Garland* (1996), 116 Ohio App.3d 461, 468, 688 N.E.2d 557.

{¶ 41} Pursuant to the foregoing analysis, this court concludes that the trial court did not err in permitting appellees to present the police officer's testimony concerning the general propriety of William's actions in operating his bicycle. In turn, we also conclude that the trial court did not err in overruling appellants' motion for a new trial based upon that issue. Accordingly, appellants' second assignment of error also lacks merit.

{¶ 42} The judgments of the trial court are affirmed.

Judgment affirmed.

CHRISTLEY and NADER, JJ., concur.

DONALD R. FORD, P.J., retired, JUDITH A. CHRISTLEY, J., and ROBERT A. NADER, J., retired, all of the Eleventh Appellate District, sitting by assignment.