PALISADES COLLECTION, L.L.C., Appellant,

v.

O'BRIEN et al., Appellee.

[Cite as *Palisades Collection, L.L.C. v. O'Brien*, 172 Ohio App.3d 186, 2007-Ohio-3460.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21979.

Decided July 6, 2007.

188

---

Javitch, Block & Rathbone, L.L.P., and R. Glenn Knirsch, for appellant.

Brannon & Associates, and David D. Brannon, for appellee.

FAIN, Judge.

{¶ 1} Plaintiff-appellant, Palisades Collection, L.L.C., appeals from a judgment rendered against it upon the counterclaim of defendant-appellee Miki Tomioka O'Brien. Palisades contends that the trial court erred by finding that it violated the Fair Debt Collection Practices Act ("FDCPA"), Section 1692, Title 15, U.S.Code, by not dismissing its complaint against O'Brien at a sufficiently early stage of the litigation. We agree. O'Brien did not plead the failure of Palisades to have dismissed the action against her in her counterclaim. Nor was this claimed violation of the FDCPA tried with the implied consent of the parties.

{¶ 2} To the contrary, the sole violation of the FDCPA alleged by O'Brien, and tried by the parties, was whether Palisades failed to send O'Brien the validation letter required by the FDCPA to a valid address. The trial court failed to make a finding on this, the sole point of contention between the parties. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings, which shall include a finding of fact whether Palisades sent the required validation letter to a valid address.

I

{¶ 3} Palisades brought this action against O'Brien and her former husband, Daniel L. O'Brien, setting forth an alleged default on a credit card account. In its complaint, Palisades Collection, L.L.C., was identified as the assignee of Bank One. In an affidavit attached to the complaint, Carmen Bermudez identified herself as an employee of Palisades and asserted that the scope of her job responsibilities "includes the performance of collection and recovery services."

{¶ 4} O'Brien answered and counterclaimed. She denied the allegations that she owed Palisades anything. Her counterclaim, in its entirety, is as follows:

{¶ 5} "17. Plaintiff violated the Fair Debt Collection Practices Act by failing to provide Defendant Miki O'Brien the following information: the amount of debt(s); the name of the creditors to whom debts are owed; a statement that Defendant O'Brien disputes said debt(s); a verification letter mailed to Defendant Miki O'Brien giving her a chance to dispute the said debt(s)."

{¶ 6} The above-quoted counterclaim concludes with a footnote citing Section 1692g, Title 15, U.S.Code.

{¶ 7} Six months after O'Brien filed her counterclaim, and after it had obtained a default judgment against Daniel O'Brien, Palisades dismissed its complaint against Miki O'Brien, without prejudice. In due course, the counterclaim was tried to the bench. Numerous times during this trial, counsel for Palisades asserted that the only issue before the trial court was whether Palisades sent

Miki O'Brien the verification letter required by the FDCPA. In a posttrial brief, Palisades asserted that O'Brien had failed to prove that it was a debt collector, and therefore subject to the FDCPA, but this not only was not asserted during trial, it contradicts Palisades's frequent assertions, during trial, that the only issue before the trial court was whether Palisades had sent the verification letter required by the FDCPA.

{¶ 8} Palisades presented evidence that it had sent a verification letter to O'Brien at her former husband's office address and had halted any further activity when this letter was returned as undeliverable as addressed. Curiously, Palisades presented no direct evidence concerning the address to which a second verification letter was sent. It did, however, present circumstantial evidence that the second verification letter was sent to 253 Orchard Drive, based upon the inference that the complaint, which was sent to O'Brien at 253 Orchard Drive, would have been sent to the same address to which the second verification letter was sent.

{¶ 9} O'Brien testified that she had lived at 253 Orchard Drive from the end of 1999 until January or February 2003, when she moved to 333 Corona, her address at the time of the trial. Robert Hogan, testifying on behalf of Palisades, testified that a second verification letter was sent to O'Brien on May 18, 2005, and that there is no record of that letter having been returned in the mail. O'Brien testified that she never received a verification letter, although she acknowledged that she did receive the summons and complaint in the mail. What appears to be the envelope containing the original, certified mail service upon O'Brien is in the record, and reflects that it was returned unclaimed. "333 Corona" has been handwritten in blue ink on this envelope, just above one of the unclaimed stickers. The record contains a request for service by ordinary mail at 253 Orchard Drive and a notation by the clerk that the summons and complaint were served by ordinary mail.

{¶ 10} Following the trial, both parties were permitted to file posttrial briefs. In its decision and entry finding in favor of O'Brien on her counterclaim and awarding her judgment in the amount of $4,250, plus interest and costs, the trial court made the following findings:

{¶ 11} "From a thorough review of the testimony and exhibits admitted herein, the Court finds that this is one collection action that simply got away from plaintiff. The case against defendant, Miki T. O'Brien, should have been dismissed well before the April 27, 2006, dismissal without prejudice by plaintiff. While the practices and procedures of plaintiff may be well intentioned in this case, there was a collapse. As such, for its failure to comply with the dictates of the Fair Debt Collection Practices Act, the Court finds that defendant is entitled to one thousand and no/100 ($1,000.00) dollars in damages. In addition thereto

the Court finds that as this case dragged on against defendant, Miki T. O'Brien, more and more attorney fees were expended. A dismissal by plaintiff of the claims it could not prove against defendant Miki T. O'Brien, would have ended the fee clock in this matter. It was plaintiff's failure to timely address its errors in this matter which kept the attorney fees adding up. The Court finds that defendant is entitled to an additional three thousand two hundred fifty and no/100 ($3,250.00) dollars as attorney fees in this matter.

{¶ 12} "It is therefore ordered, adjudged and decreed that judgment be and hereby is granted in favor of defendant, Miki T. O'Brien, and against plaintiff, Palisades Collection LLC, in the amount of four thousand two hundred fifty and no/100 ($4,250.00) dollars, plus interest thereon at the statutory rate from the date of judgment until paid and for costs."

{¶ 13} From the judgment against it, Palisades appeals.

## II

{¶ 14} Palisades's sole assignment of error is as follows:

{¶ 15} "The trial court erred in its December 14, 2006 decision by finding that Palisades's conduct in not dismissing the case at an early enough state violated the FDCPA."

{¶ 16} The FDCPA, at Section 1692g, Title 15, U.S.Code, upon which O'Brien expressly relies in her counterclaim, requires the following:

{¶ 17} "(a) Notice of debt; contents

{¶ 18} "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

{¶ 19} "(1) the amount of the debt;

{¶ 20} "(2) the name of the creditor to whom the debt is owed;

{¶ 21} "(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

{¶ 22} "(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

{¶ 23} "(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

{¶ 24} It is clear from O'Brien's counterclaim that she bases her counterclaim solely upon Palisades's alleged failure to have complied with the requirement of Section 1692g(a), Title 15, U.S.Code, quoted above. Counsel for Palisades reminded the trial court and opposing counsel several times during the trial that the sole issue before the trial court was whether this written notice was sent:

{¶ 25} "The only issue today is whether we sent Miss O'Brien an initial demand letter. That is the counterclaim. That's the only claim, Your Honor, the only issue today is whether or not we failed to send an initial demand letter and everything else is irrelevant."

{¶ 26} "The only issue before the court is the alleged failure to send the initial demand letter before filing the action."

{¶ 27} "It's just irrelevant and it has nothing to do with the counterclaim at issue and the counterclaim is whether or not we send [sic] a demand letter."

{¶ 28} "Objection. The policies of the F.D.C.P.A. are clear and that's really not the issue here. The issue here is whether we sent the letter or not."

{¶ 29} In the face of these numerous protestations by Palisades, we can hardly say that other issues, not made up by O'Brien's counterclaim, were tried with the implied consent of the parties.

{¶ 30} Therefore, we agree that the trial court erred when it predicated a finding that Palisades violated the FDCPA upon an alleged violation—that Palisades did not dismiss its complaint against O'Brien quickly enough—that was neither alleged in the counterclaim nor tried with the implied consent of the parties. To that extent, Palisades's sole assignment of error is sustained.

## III

### A

{¶ 31} Palisades makes a number of arguments in its brief that should be addressed. The first of these is that it cannot be held liable for violating the FDCPA because it has not been shown to be a debt collector for purposes of the FDCPA. Although Palisades did raise this issue in its posttrial brief, it never disputed its status as a debt collector at trial. In view of Palisades's frequently repeated protestation that the only issue before the trial court was whether it sent the validation letter required by the FDCPA (which assumes that it is a debt collector, and therefore is subject to the Act), we conclude that Palisades waived

any factual defense it might have had based upon a failure of proof of its status as a debt collector.

## B

{¶ 32} The next argument Palisades makes is that the evidence in this record does not permit a finding that it failed to send the written notice, the validation letter, required by the FDCPA. It cites a number of cases for the proposition that it satisfied its obligation when it sent the required notice to O'Brien, and the notice was not returned in the mail undelivered. In three of these cases, there does not appear to have been any dispute concerning the validity of the address to which the notice was sent. In *Mahon v. Credit Bur. of Placer Cty., Inc.* (9th Cir., 1999), 171 F.3d 1197, 1199, the debt collector mailed the letter to the home address at which the debtors had resided for 45 years. In *Van Westrienen v. Americontinental Collection Corp.* (D.Or., 2000), 94 F.Supp.2d 1087, 1097, the record included the following testimony by the debtor:

{¶ 33} "Q: The address listed on the notice [the validation letter], is that your correct address?

{¶ 34} "A: It is."

{¶ 35} And in *Robinson v. Transworld Systems, Inc.* (N.D.N.Y.1995), 876 F.Supp. 385, the validity of the address to which the validation letter was sent does not appear to have been in dispute.

{¶ 36} *Johnson v. Midland Credit Mgt. Inc.,* (Aug. 24, 2006), N.D.Ohio No. 1:05 CV 1094, 2006 WL 2473004, upon which Palisades relies, is instructive: "Thus, while the plain language of the statute does not require the debt collector to ensure actual receipt of the validation notice, the plain language does require the debt collector to send the validation notice to a *valid* and *proper* address where the consumer may actually receive it." (Emphasis added.) Id. at *12. "If debt collectors could satisfy the FDCPA by merely sending validation notices to *any* address, valid or invalid, it would not serve to inform debtors of their rights, and would constitute an 'abusive debt collection practice.' 15 U.S.C. § 1692(e)." (Emphasis sic.) Id.

{¶ 37} The *Johnson* case dealt with a situation where a validation letter was sent to an apparently valid address but was returned in the mail as undeliverable. The court held that the presumption of validity was overcome by the fact that the mail was returned as undeliverable, and the creditor had an obligation to obtain a new, valid address.

{¶ 38} In the case before us, the second validation letter sent to Miki O'Brien was not returned in the mail, but that does not itself establish that the address to which it was sent was valid. O'Brien testified that she had not lived at that

address for over two years, which is well past the expiration of forwarding orders in the United States Postal Service. *Johnson*, N.D.Ohio No. 1:05 CV 1094, 2006 WL 2473004, at *8. It appears that the subsequent ordinary mail service of the summons and complaint was forwarded to O'Brien, either by the United States Postal Service, or through the intervention of the person then living at 253 Orchard, either of whom may have recognized the importance of the mailed item. There is no evidence in the record concerning the outer appearance of the envelope containing the validation letter, and it is entirely possible that the current resident of 253 Orchard, having received what looked like junk mail addressed to the former resident, simply pitched it in the trash, a common enough occurrence.

{¶ 39} We conclude that the evidence in this record does not require, as a matter of law, a finding either way on the issue of whether Palisades sent the validation letter required by the FDCPA to a valid address. The evidence concerning the address to which the validation letter was sent was remarkably sparse. This is the factual finding that the trial court must make upon remand, but we do not presume to direct the trial court how it should find this key fact.

## C

{¶ 40} Palisades next argues that "[a]ppellee's alternative theory of liability under Section 1692g [the failure to send the required validation letter] has recently been abrogated by a clarifying amendment to the FDCPA." This argument was never made in the trial court. It was not made during the trial, and it was not made in Palisades's posttrial brief. Therefore, it has been waived.

## D

{¶ 41} Palisades next argues that liability under the FDCPA cannot be predicated upon the mere filing and maintenance of a lawsuit to recover the debt. Again, this argument was never made in the trial court. Therefore, it has been waived.

## E

{¶ 42} Palisades next argues that it is entitled to the bona-fide-error defense set forth in Section 1692k(c), Title 15, U.S.Code: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

{¶ 43} While reliance upon this defense is inconsistent with Palisades's recurring protestation, at trial, that the sole issue before the trial court was whether it sent O'Brien the validation letter required by the FDCPA, this defense was set up in Palisades's answer to the counterclaim, there was some evidence at the trial arguably relevant to this defense, and it was raised in Palisades's posttrial brief. Furthermore, the defense is closely related to the issue of whether the address to which Palisades contends that it sent the validation letter was a valid address, suggesting that an unintentional, good-faith error in ascertaining the validity of the address might excuse Palisades from liability under the Act.

{¶ 44} We conclude that the trial court may consider this defense on remand of this cause. Again, the evidence concerning the mailing of the second validation letter was remarkably sparse, and we do not presume to direct the trial court how it should find the facts in relation to the bona-fide-error defense, only that it may consider this defense.

## F

{¶ 45} Finally, Palisades argues that the application of the FDCPA to rules of state civil procedure "raises serious constitutional issues pertaining to the act's constitutionality under the commerce clause." Again, Palisades did not raise this issue in the trial court, either during trial or in its posttrial brief. Therefore, Palisades has waived this issue.

## IV

{¶ 46} Palisades's sole assignment of error having been sustained, to the extent noted, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion, which should include, as a minimum, a finding of fact on whether Palisades violated the FDCPA by failing to send the validation letter required by the FDCPA to a valid address. Because the trial court has already afforded both parties a full opportunity to present evidence on this issue, it is not required to hold a new trial, but may base its findings and judgment upon the evidence and testimony adduced at the trial previously held in this cause. But the trial court, may, in its discretion, order a new trial in this cause, if the trial court should find it advantageous to do so.

Judgment reversed
and cause remanded.

GRADY and DONOVAN, JJ., concur.