**LUCCHESI, Admr., Appellant,**

v.

**FISCHER et al., Appellees.**

[Cite as *Lucchesi v. Fischer,* 179 Ohio App.3d 317, 2008-Ohio-5934.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2008–03–020.

Decided Nov. 17, 2008.

O'Connor, Acciani & Levy, Henry D. Acciani, and Alissa J. Magenheim, for appellant.

Donald Weber, for appellee Anton Fischer.

Donald W. White, Clermont County Prosecuting Attorney, and Elizabeth Mason and Mary Lynne Birck, Assistant Prosecuting Attorneys, for appellee Clermont County Board of Commissioners.

William A. Stearns, for defendant, Aida Galbreath.

BRESSLER, Judge.

{¶ 1} Plaintiff-appellant, Anthony Lucchesi, administrator of the estate of Kaitlin Lucchesi, appeals from a decision of the Clermont County Court of Common Pleas granting summary judgment to defendant-appellee, the Clermont County Board of Commissioners, after finding that the board was entitled to immunity with respect to appellant's negligence claim.

{¶ 2} On November 27, 2003, Anton Fischer, age 16, was driving east on Round Bottom Road, also known as County Road 106, in Clermont County, Ohio. There were three passengers in his vehicle, including Kaitlin Lucchesi, age 14, who was

sitting in the front passenger seat. Fisher did not have a driver's license and had never received any formal driver's training.

{¶ 3} As he was rounding a bend in the road, Fischer saw another vehicle coming toward him, which had crossed the center line by about the width of a tire. Fischer swerved to the right to avoid colliding with the other vehicle, causing his vehicle to go off the road and onto the shoulder and berm. When he maneuvered his vehicle back onto the road, his vehicle skidded sideways as it crossed the road, struck a telephone pole, and overturned. Kaitlin was killed as a result of the accident.

{¶ 4} On October 27, 2004, Kaitlin's father, Anthony Lucchesi, administrator of the estate of Kaitlin Lucchesi, brought a negligence action against Fischer and a negligent entrustment action against Aida Galbreath, the owner of the vehicle Fischer was driving at the time of the accident. Lucchesi also brought a negligence action against the Clermont County Board of Commissioners, claiming that the board was negligent in failing to keep Round Bottom Road "open, in repair and free from nuisance."

{¶ 5} In August 2005, the board moved for summary judgment on Lucchesi's negligence claim, arguing that it was entitled to immunity from liability under R.C. 2744.02(A)(1) because it had not failed to keep Round Bottom Road open, in repair, and free from nuisance. Lucchesi filed a memorandum in opposition, citing evidence showing that there was a significant drop-off from the road's paved portion to the berm, and asserting that when Fischer maneuvered his vehicle back on the road after having swerved onto the shoulder and berm to avoid hitting another vehicle, the drop-off edge or "edge drop" caused his vehicle to skid sideways and strike the telephone pole, resulting in Kaitlin's death.

{¶ 6} On December 29, 2006, the trial court denied the board's motion after finding that the portion of Round Bottom Road where the accident occurred was part of the road's shoulder and berm, and therefore within the board's duty to maintain, and that genuine issues of material fact remained to be litigated as to the actual depth of the edge drop at the point where Fischer's vehicle first went off the road and the speed at which Fischer was driving at the time.

{¶ 7} In August 2007, the board filed a second motion for summary judgment. On October 18, 2007, the trial court granted the board's second motion for summary judgment after finding that an edge drop is not part of the road's paved portion, but instead is part of the berm, and therefore, the accident at issue was not caused by the board's failure to keep the "roadway" in repair, but instead was caused by a defect in the berm.

{¶ 8} As a result, the trial court found inapplicable to this case the exception contained in R.C. 2744.02(B)(3) to the general rule granting political subdivisions

immunity from liability for their performance of governmental functions contained in R.C. 2744.02(A)(1). The trial court concluded that because the board was entitled to immunity from liability, the board was entitled to summary judgment with respect to Lucchesi's negligence claim.

{¶ 9} In January 2008, Lucchesi voluntarily dismissed without prejudice his action against Galbreath. In February 2008, the trial court entered judgment against Fischer in Lucchesi's favor.

{¶ 10} Lucchesi now appeals the trial court's decision granting summary judgment to the board on his negligence claim, assigning the following as error:

{¶ 11} Assignment of error No. 1:

{¶ 12} "The trial court erred in refusing to recognise [sic] res judicata—the thing had already been decided."

{¶ 13} Lucchesi contends that the trial court should have denied the board's second motion for summary judgment because "the thing had already been decided" when the trial court overruled the board's first motion for summary judgment and the board did not present any new or different facts in support of its second motion. Therefore, he asserts, the trial court erred in granting the board's second motion for summary judgment.

{¶ 14} The trial court found that the doctrine of res judicata did not preclude the court from ruling on the board's second motion for summary judgment because its previous decision denying the board's first motion for summary judgment was not a final, appealable order. Generally, the denial of a motion for summary judgment is not a final, appealable order and therefore, is not subject to immediate appeal. *Klein v. Portage Cty.* (2000), 139 Ohio App.3d 749, 751–752, 745 N.E.2d 532, citing *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 554 N.E.2d 1292. However, R.C. 2744.02(C) states, "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law *is* a final order." (Emphasis added.)

{¶ 15} Prior to October 2007, there was a conflict between appellate districts in this state as to whether a trial court's order denying a political subdivision's motion for summary judgment based on the existence of a genuine issue of material fact was "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability" and therefore, a final, appealable order for purposes of R.C. 2744.02(C). The Second District Court of Appeals held that such an order was *not* a final, appealable order, see *Hubbell v. Xenia,* 167 Ohio App.3d 294, 2006-Ohio-3369, 854 N.E.2d 1133, while the Eighth Appellate District held that it was. See *Tomlin v. Pleban,* Cuyahoga App. No. 87699, 2006-Ohio-6589, 2006 WL 3635173.

{¶ 16} On October 3, 2007, the Ohio Supreme Court resolved this conflict in *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus, wherein the court held, "When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." Thus, under *Hubbell*, the trial court's denial of the board's first motion for summary judgment *was* a final, appealable order, which *was* subject to an immediate appeal. Id. Nevertheless, *Hubbell* cannot be applied retroactively to this case.

{¶ 17} Generally, a decision of the Ohio Supreme Court interpreting a statute is retroactive in its operation because it is a declaration of what is and always was the correct meaning or effect of the statute. *Anello v. Hufziger* (1988), 48 Ohio App.3d 28, 30, 547 N.E.2d 1220, citing *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 57 O.O. 411, 129 N.E.2d 467. See also *Day v. Hissa* (1994), 97 Ohio App.3d 286, 287, 288, 646 N.E.2d 565.

{¶ 18} However, the decision will not be given retroactive effect when (1) the decision is one of "first impression" and not "clearly foreshadowed," (2) retroactive application will not retard the operation of the statute, considering its prior "history, purpose and effect," and (3) doing so would produce a "substantial inequitable result," i.e., an "injustice or hardship." See *Anello*.

{¶ 19} Here, the decision in *Hubbell* qualifies as one of "first impression," which was not "clearly foreshadowed," because (1) it resolved a conflict between two appellate districts that had reached opposite conclusions on the issue of whether an order denying a political subdivision's motion for summary judgment on the basis of the existence of a genuine issue of material fact was a "final order" under R.C. 2744.02(C) and (2) three justices dissented from the majority opinion in that case.

{¶ 20} Furthermore, retroactive application of *Hubbell* to this case would retard the operation of R.C. 2744.02(C), considering its history, purpose, and effect, and produce a substantial, inequitable result. That provision was enacted to allow political subdivisions to obtain the early resolution of lawsuits brought against them, to aid in the preservation of their "fiscal integrity." See *Hubbell*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 22–26.

{¶ 21} However, retroactively applying *Hubbell* to this case would prevent the board from appealing the trial court's decision overruling its first motion for summary judgment because the time for appealing that decision has long-since expired. See App.R. 4(A) (requiring party to file a notice of appeal within 30 days of the entry of the judgment or order sought to be appealed).

{¶ 22} Furthermore, Lucchesi did not raise any argument in the trial court, nor has he raised any argument in this court, regarding R.C. 2744.02(C) or *Hubbell*. Therefore, he has waived any claim he may have had with respect to that statute and decision. See, e.g., *Palisades Collection, L.L.C. v. O'Brien*, 172 Ohio App.3d 186, 2007-Ohio-3460, 873 N.E.2d 923, ¶ 31.

{¶ 23} The remaining issue before us, then, is whether the trial court should have denied the board's second motion for summary judgment on the basis of res judicata because "the thing had already been decided" when the trial court denied the board's first motion for summary judgment and the board did not present any new or different facts in support of its second motion. This argument lacks merit.

{¶ 24} The doctrine of res judicata provides that a " 'valid, *final judgment* rendered *upon the merits* bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.' " (Emphasis added.) *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 84, quoting *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226. The trial court's decision denying the board's first motion for summary judgment was not a final judgment rendered upon the merits of Lucchesi's negligence action against the board. Id. Therefore, we agree with the trial court's decision finding that it was not precluded under the doctrine of res judicata from ruling on the board's second motion for summary judgment, though we arrive at this conclusion for reasons different from those relied upon by the trial court. See *Goudlock v. Voorhies*, 119 Ohio St.3d 398, 2008-Ohio-4787, 894 N.E.2d 692, ¶ 12 (a reviewing court is not authorized to reverse a correct judgment simply because erroneous reasons have been assigned in support thereof).

{¶ 25} Lucchesi's first assignment of error is overruled.

{¶ 26} Assignment of error No. 2:

{¶ 27} "The trial court erred in finding that there is no applicable exception to immunity and that Clermont County Bd. of Commissions [sic] is immune from liability."

{¶ 28} Lucchesi argues that his daughter's fatal accident was caused by the board's negligent failure to keep in repair the edge drop on Round Bottom Road. He asserts that the edge drop is part of the public roadway and the board's failure to keep in repair this part of the roadway places this case within an exception to the general rule granting political subdivisions immunity from liability for their negligent failure to perform a governmental or proprietary function. Therefore, Lucchesi asserts, the trial court erred in granting summary judgment to the board on his negligence claim.

{¶ 29} Political subdivisions like counties or townships are not liable generally for injury or death to persons in connection with their performance of a governmental or proprietary function. R.C. 2744.02(A)(1). Exceptions to this rule are listed in R.C. 2744.02(B). The exception that Lucchesi claims is applicable in this case is R.C. 2744.02(B)(3), which states, "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads."

{¶ 30} " 'Public roads' means public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' does not include *berms, shoulders*, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." (Emphasis added.) [1] R.C. 2744.01(H).

{¶ 31} " 'Street' or 'highway' means the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel." R.C. 4511.01(BB). " 'Roadway' means that portion of a highway improved, designed, or ordinarily used for vehicular travel, *except the berm or shoulder*." (Emphasis added.) R.C. 4511.01(EE).

{¶ 32} The terms "berm," "shoulder," and "edge drop" are not defined in R.C. 2744 or 4511. When a word or term in a statute is not defined by the statute itself, courts look to the plain and ordinary meaning of those words for guidance in determining its meaning. See *Brecksville v. Cook* (1996), 75 Ohio St.3d 53, 56, 661 N.E.2d 706.

{¶ 33} "Berm" is commonly defined as "the shoulder of a road." Webster's Third New International Dictionary (1993) at 206. "Shoulder" is commonly defined as "either edge of a roadway," and "the part of a roadway outside of the traveled way on which vehicles may be parked in an emergency." Id. at 2104.

{¶ 34} In his deposition, Lucchesi's expert discussed the meaning of "shoulder," "berm," and "edge drop" as follows:

{¶ 35} "The berm technically begins at the back of the edge line. The edge line is part of the road surface, part of the travel lane. I know you're not supposed to travel on it, but it's travelable. Anything beyond that is the recovery area, the berm area, the shoulder area. Berm and shoulder are kind of used back and forth, depending upon who you're talking to.

---

1. Likewise, R.C. 4511.01(EE) defines "roadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, *except the berm or shoulder*." (Emphasis added.)

{¶ 36} "Normally a shoulder is paved, like on the interstate. A berm normally is gravel. It can be stabilized or not, it could be grass. If it's grass, obviously, there's dirt underneath it that at times may show up as dirt. It's all a recovery area. When I talk about edge drop, I'm talking about the edge of the hard surface. If it happens to be beyond the edge line, sobeit [sic]. It's still a drop-off. It's a difference in elevation between two adjacent surfaces and in this case made of two different materials."

{¶ 37} Lucchesi contends that (1) the plain meaning of "shoulder" and "berm" does not include "edge drop," (2) the plain meaning of "edge drop" makes it part of the paved roadway, and therefore, part of the "public roadway," and (3) the plain meaning of "public roadway" includes portions of the roadway outside the white boundary lines, including the edge drop. He asserts that because the edge drop is part of the public roadway, the board's failure to keep the edge drop in repair causes this case to fall within the exception contained in R.C. 2744.02(B)(3) to the general rule of political subdivision immunity.

{¶ 38} However, the authority Lucchesi cites in support of his arguments derives from the former version of R.C. 2744.02(B)(3), which stated, "[P]olitical subdivision are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and *free from nuisance*." (Emphasis added.)

{¶ 39} One of the cases on which Lucchesi relies is *Haynes v. Franklin*, 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146, ¶ 19, in which the court stated:

{¶ 40} "In short, no bright-line test can be stated as to whether an edge drop on the berm of a county or city road constitutes a nuisance within the meaning of [former] R.C. 2744.02(B)(3). An edge drop may constitute a nuisance for purposes of that statute where the drop resulted from a failure to maintain a pre-existing shoulder or berm; where the particular edge drop is found, in light of all the surrounding facts and circumstances, to render the regularly travelled portions of the highway unsafe for the usual and ordinary course of travel; and where the political subdivision has failed to correct the defect upon being charged with actual or constructive notice of its existence. If, however, a dangerous edge drop is the result of design or construction, it is under our precedent and, by definition, not a nuisance within the scope of R.C. 2744.02(B)(3)."

{¶ 41} Another case on which Lucchesi relies is *Cupp v. Kudla*, 158 Ohio App.3d 728, 2004-Ohio-5528, 822 N.E.2d 392, ¶ 22. In that case, an appellate court interpreted *Sech v. Rogers* (1983), 6 Ohio St.3d 462, 6 OBR 515, 453 N.E.2d 705, as holding that "any paved area directly adjacent to the outer white edge line must be viewed as part of the 'roadway,'" and concluded that "it must follow that the berm of a highway begins at that point where the pavement ends." Lucchesi

asserts that in light of this language in *Sech* and *Cupp,* "[c]learly, the [Ohio] Supreme Court has determined that the pavement is not the berm or shoulder."

{¶ 42} However, in the current version of R.C. 2744.02(B)(3), which became effective in April 2003, the General Assembly deleted the "free from nuisance" language from the statute and replaced it with "negligent failure to keep public roads in repair" and "other negligent failure to remove obstructions from public roads." The General Assembly also excluded "berm" and "shoulder" from the definition of "public roads." R.C. 2744.01(H). The Ohio Supreme Court has characterized the General Assembly's amendments to R.C. 2744.02(B)(3) as "a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Howard v. Miami Twp. Fire Div.,* 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 26.

{¶ 43} In its decision granting summary judgment to the board, the trial court stated that "[w]hile it may be concluded that the paved area outside the white boundary lines could still be considered the 'roadway,' clearly the berm has been explicitly excluded from that definition." The trial court then found that "[a]n edge-drop, by definition, exists off the paved portion of the road" and "only exists as a hazard as one leaves the roadway." The trial court concluded that the accident at issue was not caused by the board's failure to keep the roadway in repair, but rather, by a defect in the berm, i.e., the edge drop, and therefore, the exception contained in R.C. 2744.02(B)(3) to the general rule of political subdivision immunity was inapplicable to this case.

{¶ 44} We conclude that the edge drop that Lucchesi asserts was the cause of the fatal accident does not fall within the term "public roads" for purposes of the exception to political subdivision immunity contained in R.C. 2744.02(B)(3). The term "public roads" expressly includes "public roads, highways, streets [and] avenues," but expressly excludes "berms" or "shoulders." R.C. 2744.01(H). "Highway" is defined as "the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel," R.C. 4511.01(BB), while "roadway" is defined as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, *except the berm or shoulder.*" (Emphasis added.) R.C. 4511.01(EE).

{¶ 45} The edge drop between the paved shoulder and the unpaved berm is clearly part of either the shoulder or the berm. However, the question of whether the edge drop is actually part of the shoulder or actually part of the berm is immaterial, since both the shoulder and the berm are expressly excluded from the definition of "public roads." R.C. 2744.01(H). Because the General Assembly expressly excluded the terms "shoulder" and "berm" from the definitions of "public roads" and "roadway," it is apparent that the legislature never intended for an edge drop to be considered part of the "public roads, highways,

streets, avenues," etc., id., for which a political subdivision could be held liable for failing to keep "in repair." R.C. 2744.02(B)(3).

{¶ 46} Consequently, the exception contained in R.C. 2744.02(B)(3) to the general rule of political subdivision immunity does not apply in this case, and therefore, the trial court did not err in granting summary judgment to the board on Lucchesi's negligence claim.

{¶ 47} Lucchesi's second assignment of error is overruled.

{¶ 48} The judgment is affirmed.

Judgment affirmed.

WALSH, P.J., and POWELL, J., concur.