Pfeifer, J.,
dissenting.
{¶ 25} “[Pjolitical subdivisions are liable for injury * * * caused by their negligent failure to keep public roads in repair * * R.C. 2744.02(B)(3). Was County Road 44 “in repair” during the early morning hours of October 19, 2011? It is at the very least a question of fact whether a two-lane roadway is in repair when its edge-line markings have been paved over and not yet repainted and there is an immediate four-and-one-half- to five-inch drop from the driving surface to the unpaved berm. The majority has made the condition of County Road 44 that morning acceptable for every roadway in Ohio and, further, has essentially held that a political subdivision can allow a drop of any height to develop from the roadway to the shoulder or berm without any duty to mitigate that dangerous condition. I dissent.
{¶ 26} Ordinarily, we would consider the public road to consist of the space between the painted edge lines, the shoulder to be the paved surface outside the edge lines, and the berm the unpaved surface adjacent to the shoulder. See Lucchesi v. Fischer, 179 Ohio App.3d 317, 2008-Ohio-5934, 901 N.E.2d 849, ¶ 44-45 (12th Dist.). In this case, however, because the edge lines had been paved over, the roadway temporarily — before the repainting of the edge lines — “could be considered to reach to the edge of the pavement.” Bonace v. Springfield Twp., 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683, ¶ 45 (7th Dist.). An edge line defines a political subdivision’s responsibility as it defines the roadway; “by painting an edge line within which the public is to travel, the political subdivision can now limit its liability and provide itself guides within which its road repairs and obstruction removals must occur.” Id. But without an edge line on County Road 44, Wayne County’s responsibility — the public road — ran the entire width of the pavement. This includes the edges.
{¶ 27} In Lucehesi, the court of appeals found that since the edge drop occurred between the shoulder and the berm, “the question of whether the edge drop is actually part of the shoulder or actually part of the berm is immaterial, since both the shoulder and the berm are expressly excluded from the definition of ‘public roads.’ ” Lucchesi at ¶ 45, citing R.C. 2744.01(H). But here, there is no intermediate, paved surface between the public road and the shoulder or berm; the edge drop is from the public road to the unpaved shoulder or berm, so the question whether the edge drop is part of the public road or part of the unpaved shoulder or berm is determinative.
*58 {¶ 28} The lead opinion offers a conclusory statement that “when Baker’s tire traveled off the edge of the pavement, it left the public road and dropped onto the berm or shoulder” and that since the “General Assembly excluded berms and shoulders from the definition of public road * * *, the edge drop must be considered part of the berm or shoulder, not the public road.” Lead opinion at ¶ 23.
{¶ 29} The excessive height of the edge of the roadway itself is the issue in this case. A roadway has depth; it is not a two-dimensional geometric plane. The edge consists of the same materials as the surface of the road. Just as the edge of a table is part of the table and not part of the floor below, the edge of the roadway is part of the roadway, not a part of the shoulder or berm. Plaintiffs-appellees allege that the severity and depth of that edge caused the accident. That edge was part of the public road.
{¶ 30} The facts in this case are unique and do not call for sweeping conclusions. Wayne County is potentially liable for the accident because the public road in question lacked edge lines, thus imposing a duty on the county to keep the entire paved surface in good repair. The fact-finder’s consideration of the evidence should determine whether, in this particular case, County Road 44 was “in repair” the morning of the accident. County employees have acknowledged that the edge of the road was higher than normal. The county did little to mitigate the potential danger: it did not lower the 55-mile-per-hour speed limit in the area where the accident occurred, and it did not post a “Low Shoulder” sign for drivers traveling in Kelli Baker’s direction north of the accident scene, even though it had posted one south of the accident scene. Plaintiffs’ expert stated in an affidavit that Ohio Department of Transportation specifications require that a drop exceeding two inches should be delineated with traffic controls such as drums and lights. There were no such traffic-control devices on County Road 44.
{¶ 31} The General Assembly has determined that political subdivisions should be responsible for keeping public roads in repair. It is no stretch of the law to determine that it is a question of fact whether Wayne County lived up to that responsibility in this case. On the other hand, the idea that a political subdivision has no duty at all to maintain a reasonable edge on a public road should be disturbing to any driver.
{¶ 32} Finally, I dissent for a more significant reason. R.C. 2744.02(B)(3) purports to provide an exception to political-subdivision immunity. But that immunity is illusory; R.C. Chapter 2744, to the extent that it grants immunity to political subdivisions, is unconstitutional. Garrett v. Sandusky, 68 Ohio St.3d 139, 141-144, 624 N.E.2d 704 (1994) (Pfeifer, J., concurring).
O’Neill, J., concurs in the foregoing opinion.
*59 Mannion & Gray Co., L.P.A., and Bradley J. Barmen, for appellees.
Baker, Dublikar, Beck, Wiley & Mathews and James F. Mathews, for appellants.
Landskroner Grieco Merriman, L.L.C., and Drew Legando, urging affirmance for amicus curiae Ohio Association for Justice.
Mazanec, Raskin & Ryder Co., L.P.A., and Frank H. Scialdone, urging reversal for amici curiae County Commissioners Association of Ohio, County Risk Sharing Authority, Public Entities Pool of Ohio, and Ohio Township Association Risk Management Authority.
Collins, Roche, Utley & Garner and Kurt D. Anderson, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.