[Cite as *Baker v. Wayne Cty.*, 2014-Ohio-3529.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

RICKY ALLEN BAKER & SHARON
MARIE BAKER, Individually and as
Administrators of the Estate of KELLI
MARIE BAKER

      Appellants

      v.

COUNTY OF WAYNE, et al.

      Appellees

C.A. No.     13CA0029

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    12-CV-0400

DECISION AND JOURNAL ENTRY

Dated: August 18, 2014

BELFANCE, Presiding Judge.

{¶1} Appellants, Ricky and Sharon Baker, appeal the order of the Wayne County Court of Common Pleas that granted summary judgment to Appellee, Wayne County. This Court reverses.

I.

{¶2} Seventeen-year-old Kelli Marie Baker died as the result of a tragic single-car accident on County Road 44 in rural Wayne County. Although there were no witnesses to the early-morning accident, those who investigated surmised that Ms. Baker's right tires went off the road; that she overcorrected by turning sharply to the left; and that she then overcorrected again by turning sharply to the right, which sent the car into rotation at a high rate of speed. Her car travelled sideways across a grassy area, collided with an ornamental stone deer, then collided with a tree while retaining enough force to rotate around the tree another 180 degrees. When the

first responders arrived, Ms. Baker's car was engulfed in flames. At the time of the accident, the Wayne County Engineer was in the midst of a road maintenance project. The portion of road where the accident occurred had been "scratch paved," the day before, which raised the level of the asphalt and covered over the existing center and edge lines. The berms had not yet been banked to mitigate drop-off at the road's edge, and the lines had not yet been repainted.

{¶3} Kelli's parents, Ricky and Sharon Baker, sued Wayne County, alleging that the condition of County Road 44 contributed to the accident. Wayne County moved for summary judgment on the basis of the immunities provided in R.C. 2744.02. The trial court determined that the County was immune from suit as provided therein and granted the motion for summary judgment. The Bakers appealed.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT IN FAVOR OF [THE COUNTY] AND IMPROPERLY RELIED UPON *BONACE V. SPRINGFIELD TOWNSHIP*, 179 OHIO APP.3D 736, WHICH IS FACTUALLY DISTINGUISHABLE FROM THE CASE AT BAR.

{¶4} In their first assignment of error, the Bakers argue that the trial court erred by granting summary judgment to Wayne County because (1) the trial court erred by employing an incorrect legal analysis to the facts of the case; (2) under the correct legal standard, there is a genuine issue of fact with respect to whether County Road 44 was "in repair" at the time of Kelli's accident; and (3) the County created a dangerous condition by virtue of the unfinished roadwork present at the time of the accident.

{¶5} Under Civ.R. 56(C), "[s]ummary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is

entitled to judgment as a matter of law." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, at ¶ 10. This Court reviews an order granting summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶6} As a general rule, political subdivisions are "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). This immunity, however, is subject to the exceptions described in R.C. 2744.02(B). One of these exceptions provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). Consequently, if the basis for a claim is the performance of a governmental function, a political subdivision is immune from suit for negligence unless one of the other four exceptions described in R.C. 2744.02(B) is present. The parties do not dispute that a governmental function is at issue in this case.

{¶7} Under R.C. 2744.02(B)(3), "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads[.]" Since 2003, R.C. 2744.01(H) has defined "[p]ublic roads" as "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision[,]" but not including "berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." R.C. 2744.02(B)(3) is, by virtue of this definition, relatively narrow in scope. "R.C. 2744.03(B)(3) is a narrow exception which applies to traveled portions

of the street and which explicitly does not contemplate shoulders or berms as part of 'public roads.'" *Ivory v. Austintown Twp.*, 7th Dist. Mahoning No. 10 MA 106, 2011-Ohio-3171, ¶ 21.

{¶8}    Cases that interpret the phrases "negligent failure to keep public roads in repair" applying the current definition of "public roads" have focused on existing roads that were not subject to any ongoing maintenance projects.  In *Lucchesi v. Fischer*, 179 Ohio App.3d 317, 2008-Ohio-5934 (12th Dist.), for example, the estate of a deceased vehicle passenger sued Clermont County for negligence in connection with an "'edge drop'" between the paved portion of a road and the unpaved berm.  *Id*. at ¶ 5.  The Court considered the definition of "public road" under R.C. 2744.01(H) in conjunction with the definitions of "highway" and "roadway" under R.C. 4511.01(BB), (EE)[1] and concluded:

> The edge drop between the paved shoulder and the unpaved berm is clearly part of either the shoulder or the berm.  However, the question of whether the edge drop is actually part of the shoulder or actually part of the berm is immaterial, since both the shoulder and the berm are expressly excluded from the definition of "public roads."  R.C. 2744.01(H).  Because the General Assembly expressly excluded the terms "shoulder" and "berm" from the definitions of "public roads" and "roadway," it is apparent that the legislature never intended for an edge drop to be considered part of the "public roads, highways, streets, avenues," etc., *id*., for which a political subdivision could be held liable for failing to keep "in repair."

*Id*. at ¶ 45.

{¶9}    The Seventh District Court of Appeals addressed a similar issue in *Bonace v. Springfield Twp*., 179 Ohio App.3d 736, 2008-Ohio-6364 (7th Dist.).  In that case, the plaintiff sued Springfield Township for negligence in connection with what she alleged to be inadequate grading between a roadway and an adjacent ditch.  *Id*. at ¶ 2-3.  Although the road had recently undergone construction, the project was completed.  The Court summarily dismissed the idea

---

[1] R.C. Chapter 2744 does not expressly incorporate the definitions set forth in R.C. 4511.01(EE), nor does R.C. 4511.01 express the intention that the definitions apply beyond that Chapter.  This Court takes no position on the propriety of using those definitions in this context.

that "ditches and berms" are part of the public roadway. *Id.* at ¶ 32. With respect to a claim related to "crumbling of asphalt outside and into the white edge line[,]" the Court concluded that an edge line and the asphalt to the right of an edge line are berm or shoulder instead of part of the public road and, consequently, the Court held that the exception to immunity contained in R.C. 2744.02(B)(3) did not apply. *Id*. at ¶ 33, 43-44. In that context, the Court noted:

> Unfortunately, shoulder and berm are not defined in the statutes. However, the common definition of shoulder is the area adjacent to or along the edge of a more important part, or more specifically, the part of the roadway outside of the traveled way. * * * [B]erm is then defined as the shoulder of a road. The space between the lines is the traveled way.
>
> * * *
>
> In conclusion, if there were no edge line on the road, then the public road could be considered to reach to the edge of the pavement. If said road is missing asphalt, it could be considered a failure to keep the public road in repair. However, by painting an edge line within which the public is to travel, the political subdivision can now limit its liability and provide itself guides within which its road repairs and obstruction removals must occur.

(Internal citations omitted.) *Id.* at ¶ 41, 45. *Compare Ivory*, 2011-Ohio-3171, at ¶ 22 (reasoning that neither a catch basin nor a related pipe is a public road because neither is "part of the paved or traveled portion of the street[.]").

{¶10} Under the analysis used in *Lucchesi* and *Bonace*, white edge lines define the boundary of a "public road" under R.C. 2744.02(B)(3). *See Lucchesi* at ¶ 44-45; *Bonace* at ¶ 43-44. According to those cases, an edge drop at the intersection of the paved and unpaved sections of a road cannot fall under the exception to immunity set forth in R.C. 2744.02(B)(3) if the drop occurs on or outside the white edge lines. *See id.* The parties in this case have urged us to adopt their respective readings of these cases in support of their position. Consequently, the Bakers have argued that County Road 44 was a road without edge lines, while the County has emphasized that edge lines existed prior to the construction project and were repainted upon its

completion. The problem is that neither *Lucchesi* nor *Baker* accounts for the situation presented by this case: a roadway that was under repair at the time the accident occurred and whose condition may have been attributable to the ongoing maintenance work. In other words, the road had no edge lines because they had recently been paved over but had not yet been repainted. The drop off at the edge of the pavement was exacerbated by the fact that the road had been scratch paved, but because the project continued day-to-day, it had not yet been mitigated at the margins.

{¶11} Given this important distinction, this case does not fit squarely within the framework set forth in *Lucchesi* and *Bonace*, and this Court is left to apply the language of R.C. 2744.03(B)(3) to this situation as a matter of first impression. In the context of a road that is subject to a repair or maintenance project that extends from day-to-day in various stages of completion, such as the one at issue in this case, we believe that the better analysis is to consider a "public road" to be the area under the control of the political subdivision, subject to the ongoing repair work, and open to travel by the public. *Compare Shope v. Portsmouth*, 4th Dist. Scioto App. No. 11CA3459, 2012-Ohio-1605, ¶ 17 (concluding that the definition of "public road" did not apply to the unimproved grassy area at the end of a street because "R.C. 2744.02(B)(3) cannot apply to an area that the traveling public has no right to drive upon.") Within this framework, an exception to immunity under R.C. 2744.02(B)(3) may exist if, in the course of the ongoing construction project, a political subdivision negligently failed to keep a public road "in repair." Because the parties' arguments are limited and this question is dispositive of this appeal, our discussion is confined to the question of whether County Road 44 was "in repair" without considering whether the County may have negligently failed to remove an obstruction.

{¶12} The phrase "in repair" has not been defined by statute, but courts have considered its application in the context of maintenance of the condition of public roads once constructed. *See Sanderbeck v. Medina*, 9th Dist. Medina No. 09CA0051-M, 2010-Ohio-3659, ¶ 7. Applying this framework, courts have concluded that failure to keep a public road "in repair" includes, for example, failure to repair potholes caused by road deterioration, *Todd v. Cleveland*, 8th Dist. Cuyahoga No. 98333, 2011-Ohio-101, ¶ 15; failure to remedy heavy brush alongside a road or "a strip of mud and debris along the curb[,]" *Crabtree v. Cook*, 196 Ohio App.3d 546, 2013-Ohio-5612, ¶ 27-28 (10th Dist.); and unrepaired bridge collapse, *Huffman v. Bd. of Cty. Commrs.*, 7th Dist. Columbiana No. 05 CO 71, 2006-Ohio-3479, ¶ 53. In addition, although we have concluded that *Bonace* is not on point with this case with respect to the definition of a "public road," the Seventh District Court of Appeals' dicta in that case regarding what could constitute failure to keep a public road in repair *is* instructive:

> In conclusion, if there were no edge line on the road, then the public road could be considered to reach to the edge of the pavement. *If said road is missing asphalt, it could be considered a failure to keep the public road in repair.* However, by painting an edge line within which the public is to travel, the political subdivision can now limit its liability and provide itself guides within which its road repairs and obstruction removals must occur.

(Emphasis added.) *Bonace*, 179 Ohio App.3d at 736, 2008-Ohio-6364, at ¶ 45.

{¶13} When Kelli Baker's accident occurred, County Road 44 was subject to a scratch paving project that continued from day-to-day, but had not yet been completed. In the course of that project, the County Engineer paved over the white edge lines and added an additional layer of asphalt that resulted in an edge drop of approximately 4 1/2 or 5 inches. In the context of the ongoing construction project, the County could be liable for negligent failure to keep County Road 44 in repair under R.C. 2744.02(B)(3). The trial court, therefore, incorrectly determined that the County was immune under the analysis set forth in *Bonace* and did not consider whether

County Road 44 was "in repair" for purposes of R.C. 2744.02(B)(3). The Bakers' assignment of error is sustained on this basis, and we need not address their remaining arguments.

III.

**{¶14}** The Bakers' assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

BRADLEY J. BARMEN, Attorney at Law, for Appellants.

JAMES F. MATHEWS, Attorney at Law, for Appellees.