**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Baker v. Wayne Cty.,* **Slip Opinion No. 2016-Ohio-1566.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-1566

BAKER ET AL., APPELLEES, v. WAYNE COUNTY ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Baker v. Wayne Cty.,* Slip Opinion No. 2016-Ohio-1566.]**

*Sovereign immunity—Exception for negligent failure to keep public roads in repair—R.C. 2744.02(B)(3)—Exception does not apply because edge drop at limit of paved road is part of berm or shoulder and does not come within definition of public road under R.C. 2744.01(H)—Court of appeals' judgment reversed.*

(No. 2014-2079—Submitted December 16, 2015—Decided April 19, 2016.)

APPEAL from the Court of Appeals for Wayne County,

No. 13CA0029, 2014-Ohio-3529.

————————————

**KENNEDY, J.**

{¶ 1} In this discretionary appeal from the Ninth District Court of Appeals, we consider for the first time the meaning of the statutory definition of "public roads" set forth in R.C. 2744.01(H) for purposes of the sovereign-immunity

exception for the negligent failure "to keep public roads in repair" under R.C. 2744.02(B)(3). Appellants, Wayne County and its employees, advance two propositions of law:

1. R.C. 2744.01(H) is the exclusive definition of "public roads" for purposes of determining the immunity of a political subdivision in all claims which allege a negligent failure to maintain.

2. An "edge drop" at the limit of a paved roadway [is] not part of a "public road," and a political subdivision is entitled to immunity when a motor vehicle accident is premised upon a condition of a berm, shoulder, edge or right-of-way.

{¶ 2} When the General Assembly has enacted definitions within a statute, we apply those definitions as written when interpreting that statute. *Muenchenbach v. Preble Cty.*, 91 Ohio St.3d 141, 148, 742 N.E.2d 1128 (2001). For the reasons that follow, we hold that an edge drop at the limit of the paved road is part of the berm or shoulder and does not come within the definition of public road in R.C. 2744.01(H). Therefore, we reverse the judgment of the Ninth District Court of Appeals, and we reinstate the trial court's grant of summary judgment in favor of appellants.

I.      **Facts and Procedural History**

        A. *The accident*

{¶ 3} At approximately 6:28 a.m. on October 19, 2011, Kelli Baker, a 17-year-old student, was driving south on County Road 44 ("CR 44"), which is a two-lane roadway in Wayne County. It was raining and before sunrise. As she was driving, one of Baker's tires slipped off the right side of the road, and as a result, she overcorrected to the left. After the car came back onto the road, she then overcorrected to the right. The vehicle traveled off the right side of the road again

2

and struck a concrete deer statue and a tree. After hitting the tree, the car caught on fire and was engulfed in flames. Tragically, Baker died at the scene.

{¶ 4} The Ohio State Highway Patrol conducted an investigation of the accident and determined that an unsafe speed for the conditions and the driver's age and driving inexperience were contributing factors. Based on his expert analysis, a highway-patrol accident reconstructionist concluded that the tire dropped off the road, that the driver responded by jerking the steering wheel to get the vehicle back on the road, and that this response caused the vehicle to go out of control, veer off the road a second time, and crash into the statue and the tree.

### B. Road repair

{¶ 5} The day before the accident, the portion of CR 44 on which the accident occurred had been scratch paved. Scratch paving levels the surface of the road by adding an additional one-inch layer of asphalt. As a result of the additional layer of asphalt, there was a four-and-one-half- to five-inch drop from the edge of the pavement to the berm. During the resurfacing, there were no painted edge lines or additional berm material laid that would have made the berm level with the surface of the road.

{¶ 6} Before the resurfacing, there were painted edge lines on this stretch of CR 44, and the edge lines were repainted about four weeks after the accident. However, it is undisputed that the Ohio Manual of Uniform Traffic Control Devices does not require edge lines on CR 44.

### C. Lower court proceedings

{¶ 7} Baker's estate and parents filed a wrongful-death lawsuit against Wayne County. Following discovery including depositions of the relevant witnesses, appellants filed a motion for summary judgment, which the trial court granted. Baker's parents and her estate appealed.

{¶ 8} The Ninth District Court of Appeals reversed and remanded, holding that the edge drop that existed on CR 44 at the time of Baker's accident could give

rise to appellants' liability under R.C. 2744.02(B)(3) for negligently failing to keep "public roads" in repair. 2014-Ohio-3529, 17 N.E.3d 639, ¶ 13 (9th Dist.). The appellate court mentioned but did not apply the statutory definition of public road set forth in R.C. 2744.01(H). Instead, the court concluded that because CR 44 was undergoing a maintenance project that extended from day to day in various states of completion, a public road should be considered to be "the area under the control of the political subdivision, subject to the ongoing repair work, and open to travel by the public." 2014-Ohio-3529, 17 N.E.3d 639, at ¶ 11.

{¶ 9} This court accepted review of the two above-quoted propositions of law. 142 Ohio St.3d 1464, 2015-Ohio-1896, 30 N.E.3d 973.

**II.    Law and Analysis**

*A.  Standard of review*

{¶ 10} We review cases involving a grant of summary judgment using a de novo standard of review. *Esber Beverage Co. v. Labatt USA Operating Co.*, 138 Ohio St.3d 71, 2013-Ohio-4544, 3 N.E.3d 1173, ¶ 9. Summary judgment is appropriately granted when:

> "(1) [n]o genuine issue as to any material fact remains to be litigated;
> (2) the moving party is entitled to judgment as a matter of law; and
> (3) it appears from the evidence that reasonable minds can come to
> but one conclusion, and viewing such evidence most strongly in
> favor of the party against whom the motion for summary judgment
> is made, that conclusion is adverse to that party."

*M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R. 56(C).

*B. Sovereign immunity*

{¶ 11} A claim of sovereign immunity by a political subdivision requires the three-tiered analysis provided in R.C. Chapter 2744. *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 16. Under the first tier of the analysis, a political subdivision has immunity for negligent acts as long as the negligent acts are in connection with governmental or proprietary functions. *See* R.C. 2744.02(A)(1); *Rankin* at ¶ 17. The second tier of the analysis examines whether any of the five exceptions listed in R.C. 2744.02(B) applies. *Rankin* at ¶ 18. If an exception does apply, the third tier of the analysis considers whether sovereign immunity can be reinstated by one of the statutorily listed defenses, such as the discretionary defenses set forth in R.C. 2744.03(A)(3) and (5). *Rankin* at ¶ 27.

{¶ 12} To interpret these statutes, we apply familiar rules. "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 14. "If it is ambiguous, we must then interpret the statute to determine the General Assembly's intent. If it is not ambiguous, then we need not interpret it; we must simply apply it." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 13. When a statute includes definitions, those definitions must be given effect; "[d]efinitions provided by the General Assembly are to be given great deference in deciding the scope of particular terms." *Montgomery Cty. Bd. of Commrs. v. Pub. Util. Comm.*, 28 Ohio St.3d 171, 175, 503 N.E.2d 167 (1986).

{¶ 13} We have also recognized when interpreting the exceptions to sovereign immunity provided in R.C. Chapter 2744 that judicial standards "cannot apply to reformulate a definition * * * provided by the General Assembly." *Muenchenbach*, 91 Ohio St.3d at 148, 742 N.E.2d 1128. We have previously held

that the statute reflects "a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Howard v. Miami Twp. Fire Div*., 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 26.

{¶ 14} Under the first tier of sovereign-immunity analysis, the parties do not dispute that the CR 44 maintenance project in which appellants were engaged qualified as a governmental function. Additionally, since appellants have not asserted any statutory defenses, such as the discretionary defenses set forth in R.C. 2744.03(A)(3) and (5), the third tier of the sovereign-immunity analysis is not implicated here.

{¶ 15} At issue is the second tier of the sovereign-immunity analysis— whether the exception to sovereign immunity set forth in R.C. 2744.02(B)(3), the "negligent failure to keep public roads in repair," applies. Whether this exception applies depends, in turn, on whether the General Assembly's definition of public road includes the four-and-one-half- to five-inch edge drop at issue in this case.

### *C. Definition of public road*

{¶ 16} The General Assembly defined what areas constitute a public road and what areas do not: "Public roads means public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." R.C. 2744.01(H).

{¶ 17} The Ninth District held that in the context of an ongoing repair or maintenance project, a public road is "the area under the control of the political subdivision, subject to the ongoing repair work, and open to travel by the public." 2014-Ohio-3529, 17 N.E.3d 639, at ¶ 11. The court did so without consideration of the areas the General Assembly statutorily excluded from the definition of public road. The result was an expansion of the definition to include "area[s] under the control of the political subdivision"—in direct contravention of the General

Assembly. *See Montgomery Cty. Bd. of Commrs*., 28 Ohio St.3d at 175, 503 N.E.2d 167.

{¶ **18**} Because a definition was provided by the General Assembly, R.C. 2744.01(H) is the exclusive definition of public road for purposes of determining sovereign immunity from all claims that allege a negligent failure to maintain. That definition expressly excludes berms and shoulders. Therefore, if an edge drop is part of the berm or shoulder, then the exception to sovereign immunity does not apply.

### D. Is an edge drop part of a public road?

{¶ **19**} Appellants assert that the edge drop is part of the berm, not the public road, and that the narrow R.C. 2744.02(B)(3) exception to sovereign immunity therefore does not apply. Appellees argue that the edge drop is part of the public road because the drop was created when the additional layer of asphalt was added during the scratch paving.

{¶ **20**} To determine whether the edge drop at the limit of a paved road is part of the berm or shoulder—as opposed to part of a public road—it is necessary to define these terms. R.C. 2744.01(H) does not define shoulder, berm, or right-of-way when it excludes these areas from the definition of public road. Because "shoulder" and "berm" have not acquired a technical or particular meaning, whether by legislative definition or otherwise, they should be given their usual and ordinary meaning. R.C. 1.42; *Weaver v. Edwin Shaw Hosp*., 104 Ohio St.3d 390, 2004-Ohio-6549, 819 N.E.2d 1079, ¶ 12.

{¶ **21**} Below, the Ninth District considered cases from the Twelfth and Seventh Districts analyzing the application of the R.C. 2744.02(B)(3) exception to sovereign immunity for political subdivisions that negligently fail "to keep public roads in repair." 2014-Ohio-3529, 17 N.E.3d 639, at ¶ 8-10. In *Lucchesi v. Fischer*, 179 Ohio App.3d 317, 2008-Ohio-5934, 901 N.E.2d 849, the Twelfth District noted, " 'Berm' is commonly defined as 'the shoulder of a road.' 'Shoulder' is

commonly defined as 'either edge of a roadway,' and 'the part of a roadway outside of the traveled way on which vehicles may be parked in an emergency.' " (Citation omitted.) *Id.* at ¶ 33, quoting *Webster's Third New International Dictionary* 206 (1993). The Twelfth District concluded that "[t]he edge drop between the paved shoulder and the unpaved berm is clearly part of either the shoulder or the berm." *Id.* at ¶ 45. In *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683, ¶ 45, the Seventh District concluded that "if there were no edge line on the road, then the public road could be considered to reach to the edge of the pavement."

{¶ 22} Distinguishing both *Lucchesi* and *Bonace* on the grounds that those cases did not involve a road under repair at the time of the accident, the Ninth District expanded the definition of public road to include "the area under the control of the political subdivision, subject to the ongoing repair work, and open to travel by the public." 2014-Ohio-3529, 17 N.E.3d 639, at ¶ 10-11. The Ninth District thereby impermissibly applied a "judicial standard[ ] * * * to reformulate a definition * * * provided by the General Assembly." *Muenchenbach*, 91 Ohio St.3d at 148, 742 N.E.2d 1128. Instead, the Ninth District should have applied the usual and ordinary meanings of "berm" and "shoulder."

{¶ 23} Applying those definitions in this case, when Baker's tire traveled off the edge of the pavement, it left the public road and dropped onto the berm or shoulder. The General Assembly excluded berms and shoulders from the definition of public road. *See* R.C. 2744.01(H). Therefore, the edge drop must be considered part of the berm or shoulder, not the public road. Because the edge drop is part of the berm or shoulder, this area does not come within the definition of public road set forth in R.C. 2744.01(H). As a result, the R.C. 2744.02(B)(3) exception to sovereign immunity does not apply, and appellants' claims are barred by sovereign immunity. *See* R.C. 2744.02(A)(1).

### III.    Conclusion

{¶ 24} When, as here, the General Assembly has enacted definitions within a statute, we apply those definitions as written when interpreting that statute. *Muenchenbach*, 91 Ohio St.3d at 148, 742 N.E.2d 1128.  We hold that an edge drop at the limit of a paved road is part of the berm or shoulder and is specifically excluded from the definition of public road in R.C. 2744.01(H).  Therefore, we reverse the judgment of the Ninth District Court of Appeals, and we reinstate the trial court's grant of summary judgment in favor of appellants.

Judgment reversed.

LANZINGER and FRENCH, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

PFEIFER, J., dissents with an opinion that O'NEILL, J., joins.

O'DONNELL, J., dissents for the reasons stated in the opinion of Ninth District Court of Appeals.

O'NEILL, J., dissents with an opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 25} "[P]olitical subdivisions are liable for injury * * * caused by their negligent failure to keep public roads in repair * * *."  R.C. 2744.02(B)(3).  Was County Road 44 "in repair" during the early morning hours of October 19, 2011?  It is at the very least a question of fact whether a two-lane roadway is in repair when its edge-line markings have been paved over and not yet repainted and there is an immediate four-and-one-half- to five-inch drop from the driving surface to the unpaved berm.  The majority has made the condition of County Road 44 that morning acceptable for every roadway in Ohio and, further, has essentially held that a political subdivision can allow a drop of *any* height to develop from the roadway to the shoulder or berm without any duty to mitigate that dangerous condition.  I dissent.

**{¶ 26}** Ordinarily, we would consider the public road to consist of the space between the painted edge lines, the shoulder to be the paved surface outside the edge lines, and the berm the unpaved surface adjacent to the shoulder. *See Lucchesi v. Fischer*, 179 Ohio App.3d 317, 2008-Ohio-5934, 901 N.E.2d 849, ¶ 44-45 (12th Dist.). In this case, however, because the edge lines had been paved over, the roadway temporarily—before the repainting of the edge lines—"could be considered to reach to the edge of the pavement." *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, 903 N.E.2d 683, ¶ 45 (7th Dist.). An edge line defines a political subdivision's responsibility as it defines the roadway; "by painting an edge line within which the public is to travel, the political subdivision can now limit its liability and provide itself guides within which its road repairs and obstruction removals must occur." *Id.* But without an edge line on County Road 44, Wayne County's responsibility—the public road—ran the entire width of the pavement. This includes the edges.

**{¶ 27}** In *Lucchesi*, the court of appeals found that since the edge drop occurred between the shoulder and the berm, "the question of whether the edge drop is actually part of the shoulder or actually part of the berm is immaterial, since both the shoulder and the berm are expressly excluded from the definition of 'public roads.' " *Lucchesi* at ¶ 45, citing R.C. 2744.01(H). But here, there is no intermediate, paved surface between the public road and the shoulder or berm; the edge drop is from the public road to the unpaved shoulder or berm, so the question whether the edge drop is part of the public road or part of the unpaved shoulder or berm is determinative.

**{¶ 28}** The majority offers a conclusory holding that "when Baker's tire traveled off the edge of the pavement, it left the public road and dropped onto the berm or shoulder" and that since the "General Assembly excluded berms and shoulders from the definition of public road * * *, the edge drop must be considered part of the berm or shoulder, not the public road." Majority opinion at ¶ 23.

**{¶ 29}** The excessive height of the edge of the roadway itself is the issue in this case. A roadway has depth; it is not a two-dimensional geometric plane. The edge consists of the same materials as the surface of the road. Just as the edge of a table is part of the table and not part of the floor below, the edge of the roadway is part of the roadway, not a part of the shoulder or berm. Plaintiffs-appellees allege that the severity and depth of that edge caused the accident. That edge was part of the public road.

**{¶ 30}** The facts in this case are unique and do not call for a sweeping holding. Wayne County is potentially liable for the accident because the public road in question lacked edge lines, thus imposing a duty on the county to keep the entire paved surface in good repair. The fact-finder's consideration of the evidence should determine whether, in this particular case, County Road 44 was "in repair" the morning of the accident. County employees have acknowledged that the edge of the road was higher than normal. The county did little to mitigate the potential danger: it did not lower the 55 mile-per-hour speed limit in the area where the accident occurred, and it did not post a "Low Shoulder" sign for drivers traveling in Kelli Baker's direction north of the accident scene, even though it had posted one south of the accident scene. Plaintiffs' expert stated in an affidavit that Ohio Department of Transportation (ODOT) specifications require that a drop exceeding two inches should be delineated with traffic controls such as drums and lights. There were no such traffic-control devices on County Road 44.

**{¶ 31}** The General Assembly has determined that political subdivisions should be responsible for keeping public roads in repair. It is no stretch of the law to determine that it is a question of fact whether Wayne County lived up to that responsibility in this case. On the other hand, the idea that a political subdivision has no duty at all to maintain a reasonable edge on a public road should be disturbing to any driver.

{¶ 32} Finally, I dissent for a more significant reason. R.C. 2744.02(B)(3) purports to provide an exception to political-subdivision immunity. But that immunity is illusory; R.C. Chapter 2744, to the extent that it grants immunity to political subdivisions, is unconstitutional. *Garrett v. Sandusky*, 68 Ohio St.3d 139, 141-144, 624 N.E.2d 704 (1994) (Pfeifer, J., concurring).

O'NEILL, J., concurs in the foregoing opinion.

—————————

**O'NEILL, J., dissenting.**

{¶ 33} Respectfully, I must dissent.

{¶ 34} The majority employs the kind of judicial metaphysics that gave rise to the term "legal fiction." It is simply make-believe to suggest that the portion of the asphalt that dropped off five inches to meet the berm on the side of the road is not also a part of the road. It is like saying the period at the end of this sentence is not a part of the sentence. The majority can use any Aristotelian definition of a road it wants. But the five inches of asphalt that define the outer edge of the road caused this accident—not the mud next to it.

{¶ 35} Thus, I dissent.

—————————

Mannion & Gray Co., L.P.A., and Bradley J. Barmen, for appellees.

Baker, Dublikar, Beck, Wiley & Mathews and James F. Mathews, for appellants.

Landskroner Grieco Merriman, L.L.C., and Drew Legando, urging affirmance for amicus curiae Ohio Association for Justice.

Mazanec, Raskin & Ryder Co., L.P.A., and Frank H. Scialdone, urging reversal for amici curiae County Commissioners Association of Ohio, County Risk Sharing Authority, Public Entities Pool of Ohio, and Ohio Township Association Risk Management Authority.

Collins, Roche, Utley & Garner and Kurt D. Anderson, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

_____