JUDGE EMANUELLA GROVES
Facts
On June 13, 2017, Mr. Beonte Walker ("Defendant") was cited for fare evasion on the Greater Cleveland Regional Transit Authority ("RTA") Red Line rapid/transit train ("Red Line") in violation of C.C.O. § 605.11 Misconduct Involving a Public Transportation System ("fare evasion"), which states in pertinent part, "No person shall evade the payment of the known fares of a public transportation system." Defendant testified that he boarded the Red Line with the intention of paying his fare at Tower City upon exiting the train. The RTA police officer testified that he observed Defendant attempt to walk through the turnstile at the Tower City Center rotunda and that Defendant was unable to exit because he did not possess a fare card. The Defendant testified he voluntarily approached the officer to inquire about how to pay the fare because he did not see a "payable vendor machine."[1] He testified that he told the officer that he *409 had funds readily available to pay his fare. The officer agreed that Defendant did question whether he could pay at Tower City.
Defendant indicated that he had not ridden the Red Line in several years and that, in his past experiences with riding the Red Line, he had been allowed to pay his fare at a payable vendor machine when he detrained. On cross-examination, Defendant asked the officer why RTA police did not stop passengers on the Blue and Green lines, as they do on the Red Line. In reply, the officer testified that the HealthLine and the Red Line routes are proof-of-payment lines where payment is required upon entry. Consequently, all RTA routes do not have the same method of payment, nor the same manner of enforcement by RTA police.
The officer explained to the Court that passengers on the Red Line must have a valid fare card to swipe through the turnstile in order to exit the rotunda. Once a valid fare card is swiped at the turnstile, the turnstile is activated and allows the passenger to exit. Passengers exiting the Red Line, via the Tower City rotunda, do not have a fare payment method available. Therefore, they must purchase their fare cards upon embarking the train.
In its closing argument, the City of Cleveland ("City") argued that Defendant's failure to produce a valid fare card is sufficient evidence to find Defendant guilty of evasion because: 1) he was located in a fare-paid zone after exiting the Red Line without a valid fare card, 2) signage posted on the proof of payment line required payment upon entry, and 3) based on the ordinary definition of the term "evasion," exiting the Red Line without fare (i.e. a fare card) constitutes avoidance of payment.
Findings and Conclusion of Law
In order to find the Defendant guilty of fare evasion, the evidence must show that the Defendant evaded the payment of fare. The issue before this court is whether mere absence of a fare card constitutes an evasion of payment. To make this determination the court must examine the mens rea for the crime of evasion and the definition of "evade."
In considering the meaning of a statute, a court must ascertain and give effect to the legislature's intent in the statute's enactment.[2] First, a court must look to the plain language of the statute to interpret its meaning.[3] When the language is "clear and unambiguous," the court must apply the language consistently within the plain meaning of the statutory language.[4] A legislative body is not required to define every word used in a law.[5] Where any term is undefined, the court may look to its common, everyday meaning.[6] Here, § 605.11(a) fails to define "evade." The common definition of "evade" as defined in *410 Webster's Dictionary is, "to escape from by trickery or cleverness, to get around by trickery, to avoid doing or fulfilling, to elude or escape." Consequently, in order to find the Defendant guilty of fare evasion, the City of Cleveland must prove beyond a reasonable doubt that the Defendant recklessly engaged in conduct which demonstrated an act of evasion in his failure to pay his fare.
It is well-established that all criminal charges must include an element of mens rea or mental state. C.C.O. § 605.11, Misconduct Involving Public Transportation, does not state a mens rea. Where a statute or ordinance does not define the requisite mens rea element and does not impose strict liability, courts must apply a reckless standard.[7] "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature."[8]
Generally, this court believes that the only opportunity to determine evasion, on a proof-of-payment route, is at the point of boarding, when payment is required. Typically, boarding is when evidence of evasion would best be procured. However, at the Red Line's Tower City destination, proof of payment is enforced at the turnstiles located in the rotunda. Passengers who fail to have a valid fare card cannot proceed through the turnstiles.
The officer testified that as a "fare enforcement officer," he only approaches recent riders of the Red Line if the turnstile fails to release.[9] Failure of the turnstile release requires a determination as to whether the crime of evasion has been committed. This fare enforcement practice is distinguished from "proof of payment upon entry" routes on the HealthLine, on which officers approach passengers on the RTA vehicle without cause.[10]
Certainly, when a passenger stands in front of an unreleased turnstile without a fare card, an inquiry is necessary. The failure of the turnstile to release and the absence of a fare card arguably create reasonable articulable suspicion that the crime of fare evasion might have been committed. However, further investigation must be conducted to ascertain why the turnstile did not release. Here, the Defendant explained that he was unfamiliar with the Red Line system. Additionally, he knew the Blue and Green lines have a different system which caused confusion. As a matter of fact, within Tower City rotunda, the Blue and Green lines have payer vending machines located before the turnstiles, which provide passengers an opportunity to purchase their fare cards. So, unlike Red Line passengers who detrain at the Tower City destination, Blue and Green line passengers have access to a payable vendor machine which eliminates an inability to pay at Tower City and fare evasion claim. Certainly, different payment methods can create confusion for passengers. The officer confirmed in his testimony that Defendant asked about paying at the Tower City rotunda. Defendant indicated he had money to pay his fare. There is no question that Defendant did not have a fare card when he approached the police officer.
The reason for the failure to have a fare card is the determinative factor of whether the crime of evasion has occurred. If the ordinance prohibited the failure to possess *411 a fare card, the defendant would be guilty. The City of Cleveland argued that the failure to possess a fare card is avoidance of fare. However, the Misconduct Involving Public Transportation ordinance prohibits evasion of fare, not avoidance. Clearly, if the legislature had intended to prohibit the avoidance of fare, then it would have chosen the word "avoid," as opposed to "evade". The determination of whether the defendant evaded the fare must be made after a review of the testimony and credibility of the witnesses is completed.
From the testimony, it was clear Defendant's failure to have a fare card was not through evasion. He mistakenly believed he could pay upon his departure. As noted above, the officer indicated that the Defendant did ask about where to make his payment. A mistaken belief by an RTA passenger does not constitute evasion. The Defendant also raised questions about different payment methods which can cause confusion for infrequent passengers. Certainly, some passengers get on the Red Line with no intentions of paying, but this court finds that is not the situation here.
Given Defendant's testimony and the fact the Blue and Green lines allow for payment at Tower City, these facts raise reasonable doubt of the Defendant's guilt. Additionally, there was no testimony that the Defendant had engaged in this conduct before. If he had done so, any confusion the Defendant had would have been eliminated from the prior incident. The possibility that different payment systems may create confusion cannot be ignored in determining whether a passenger has evaded fare, especially when the differences occur in the same building, a short distance from each other.
It is clear that Defendant did not pay his fare, but his payment was not with heedless indifference (recklessness). There is no doubt that reasonable confusion about payment can exist with two different RTA payment systems. Defendant's failure to pay his fare was not due to evasion. His actual conduct does not establish guilt, beyond a reasonable doubt, of fare evasion, in violation of C.C.O. § 605.11. Accordingly, this court finds Defendant not guilty.

T.R. at 3 ("payable vendors" allow passengers to purchase fare cards at the Tower City rotunda).

State v. D.B. , 150 Ohio St.3d 452, 2017-Ohio-6952, 82 N.E.3d 1162 (2017), citing State v. Lowe , 112 Ohio St. 3d 507, 2007-Ohio-606, 861 N.E.2d 512 ¶ 9 (Ohio 2007).

City of Cleveland v. Watts , 164 Ohio Misc. 2d 25, 29, 2011-Ohio-3606, 951 N.E.2d 493 ; see Lowe , 112 Ohio St. 3d 507, 2007-Ohio-606, 861 N.E.2d 512 at ¶ 9, citing State ex rel. Burrows v. Indus. Comm., 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (Ohio 1997).

City of Cleveland v. Hernandez , 163 Ohio Misc. 2d 37, 40, 2011-Ohio-3394, 950 N.E.2d 1040, citing State v. Knoble , 2008-Ohio-5004, 2008 WL 4409463 at P12;see also Baker v. Wayne Cnty. , 147 Ohio St.3d 51, 54, 2016-Ohio-1566, 60 N.E.3d 1214 ; and see also Lowe , 112 Ohio St. 3d 507, 2007-Ohio-606, 861 N.E.2d 512 at ¶ 9.

State v. Dorso , 4 Ohio St. 3d 60, 62, 446 N.E.2d 449 (Ohio 1983).

Id.

R.C. § 2901.21.

R.C. § 2901.22.

T.R. p. 9:5-16.

Id. at 10:7-16; see also City of Cleveland v. Ronnie Williams , unpublished.