[Cite as *Mauntel v. Norwood*, 2018-Ohio-4756.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| MARIAH MAUNTEL, | : | APPEAL NO. C-170635 |
| | | TRIAL NO. A-1504405 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| CITY OF NORWOOD, | : | |
| Defendant-Appellant, | : | |
| and | : | |
| DEBBIE SIMMONS, | : | |
| Defendant. | : | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: November 30, 2018


*Beckman Weil Shepardson LLC* and *Stephanie M. Day,* for Plaintiff-Appellee,

*Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere* and *Kurt M. Irey,* for Defendant-Appellant.

**DETERS, Judge.**

{¶1}   Plaintiff-appellee Mariah Mauntel sustained an injury after stepping on a concrete curb that crumbled underneath her.   Mauntel sued defendant-appellant the city of Norwood, Ohio, where the curb was located, and defendant Debbie Simmons, Mauntel's grandmother and owner of the property adjacent to the curb.   Norwood moved for summary judgment, arguing that it was immune from liability under Ohio's Political Subdivision Tort Liability Act.   The trial court overruled Norwood's motion and Norwood appealed.   Because we determine that the curb upon which Mauntel sustained her injury is not a part of the public road for purposes of avoiding political-subdivision immunity, we reverse the trial court's judgment.

## I.   INTRODUCTION

{¶2}   According to Mauntel, in August of 2012, she and Simmons walked towards Simmons's van, which was parked on the street in front of Simmons's house. Mauntel walked carefully, looking down, as she carried her newborn son in an infant carrier.   Mauntel approached the concrete curb, and it appeared intact.   When Mauntel stepped on the curb with her left foot, the curb crumbled, and Mauntel's foot rolled underneath her.   As she fell, Mauntel tried to protect her baby, and she broke her foot.

{¶3}   Mauntel filed a complaint against Simmons and Norwood, alleging that they had negligently failed to maintain the roadway in front of Simmons's home. Norwood moved for summary judgment, claiming that: (1) it did not have notice regarding the defective condition of the curb, so it could not be held liable in negligence, and (2) it was entitled to the general grant of immunity as a political

subdivision under R.C. 2744.02(A)(1), and that the exception in R.C. 2744.02(B)(3) did not apply, because a curb is not a part of the public road.

{¶4}   Mauntel opposed Norwood's motion.  Mauntel argued that curbs are an integral part of the public road, so that the exception to immunity applied.  In support of her argument, Mauntel attached an affidavit from H. Richard Hicks, an engineer with experience in highway and street design.  Hicks averred that curbs serve several important functions on roadways, including protecting pedestrians by separating vehicular traffic, discouraging drivers from parking on sidewalks and lawns, providing structural supports to the streets, and channeling water into storm drains.  Mauntel also opposed Norwood's assertion that it could not be held liable in negligence.

{¶5}   The trial court denied Norwood's summary-judgment motion, holding that the curb in this case is part of the public road and therefore the exception to immunity in R.C. 2744.02(B)(3) applied.  Norwood has appealed.

## II.    LAW AND ANALYSIS

### A. Finality and Standard of Review

{¶6}   In a single assignment of error, Norwood argues that the trial court erred in denying Norwood's motion for summary judgment.

{¶7}   An appellate court's jurisdiction is limited to review of final, appealable orders.  Ohio Constitution, Article IV, Section 3(B)(2); R.C. 2505.02.  R.C. 2744.02(C) provides: "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."  Applying R.C.

2744.02(C), the Ohio Supreme Court has determined that an order which denies a political subdivision the benefit of alleged political-subdivision immunity is both final and appealable. *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus. Because the order from which Norwood appeals denies Norwood the benefit of political-subdivision immunity, that order is a final, appealable order over which this court has jurisdiction.

{¶8} An order denying summary judgment to a political subdivision on immunity grounds is reviewed de novo and governed by Civ.R. 56(C). *Pelletier v. City of Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210. Under Civ.R. 56(C), summary judgment is appropriate when (1) no genuine issues of material fact exist; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmovant, and that conclusion is adverse to the nonmovant. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

### B. Political-Subdivision Immunity and "Public Roads"

{¶9} R.C. Chapter 2744 governs political-subdivision immunity. In determining whether immunity applies, courts apply a three-tiered analysis:

> The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. [*Greene Cty. Agricultural Soc. v. Liming* (2000), 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141]; R.C. 2744.02(A)(1). However, that immunity is

not absolute. R.C. 2744.02(B); *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610.

The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Id.* at 28, 697 N.E.2d 610.

* * *

If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability.

*Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7-9.

{¶10} The first tier of the immunity analysis provides a general grant of immunity to political subdivisions performing governmental functions. R.C. 2744.02(A)(1) provides, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." "Governmental function" as used in R.C. Chapter 2744 includes, "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds[.]" R.C. 2744.01(C)(2)(e).

{¶11} There is no dispute that the city of Norwood is a political subdivision. *See* R.C. 2744.01(F). Moreover, the parties do not dispute that the allegations in Mauntel's complaint involve the governmental function of maintaining and repairing roadways. *See* R.C. 2744.01(C)(2)(e). Therefore, the analysis shifts to whether any exceptions to immunity apply.

{¶12} R.C. 2744.02(B) lists exceptions to political-subdivision immunity. Both parties agree that the only exception that could apply to Mauntel's complaint is R.C. 2744.02(B)(3). In relevant part, R.C. 2744.02(B)(3) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *." The parties dispute whether Mauntel was injured on a public road.

{¶13} R.C. 2744.01(H) provides "the exclusive definition" of "public roads" as used in R.C. 2744.02(B)(3). *Baker v. Wayne Cty.*, 147 Ohio St.3d 51, 2016-Ohio-1566, 60 N.E.3d 1214, ¶ 18. " 'Public roads' means public roads, highways, streets, avenues, alleys, and bridges within a political subdivision." R.C. 2744.01(H). " 'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." *Id.* The undisputed facts indicate that Mauntel sustained her injury on the curb. Therefore, we must decide whether the curb where Mauntel sustained her injury is part of the public road to determine whether R.C. 2744.02(B)(3) applies.

### C. Is the Curb Part of the Public Road?

{¶14} In determining whether the curb is part of the public road, the trial court relied on a case cited by Mauntel, *Heath v. City of Cleveland*, 8th Dist. Cuyahoga No. 65702, 1994 WL 372369 (July 14, 1994). In *Heath*, the plaintiff was injured when she stepped on a broken curb, and she sued the city of Cleveland for failing to repair the curb. Cleveland moved for summary judgment, asserting political-subdivision immunity. At the time, former R.C. 2744.02(B)(3) stated: "Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *."

{¶15} An employee of Cleveland's service department testified that Cleveland assumed responsibility for repairing curbs in areas near crosswalks. The trial court determined that the curb at issue was located in the middle of the block, outside of a crosswalk, therefore Cleveland owed no duty to keep the curb in repair under former R.C. 2744.02(B)(3). Plaintiff appealed. The Eighth Appellate District determined that the curb constituted part of the roadway and that the city of Cleveland had a duty to "keep the curb free from nuisance even when the curb is located outside of a crosswalk area." *Heath* at *2. In reaching this conclusion, the *Heath* court relied on an earlier case from its district, which held that the duty to keep streets in repair and free from nuisance "does not change when the path is not an 'ordinary travelled way.'" *Id.*, quoting *Kelly v. Cleveland Elec. Illuminating Co.*, 8th Dist. Cuyahoga No. 59044, 1991 WL 263711 (Dec. 12, 1991).

7

{¶16} Almost ten years after *Heath* was decided, in April 2003, the legislature amended R.C. 2744.02(B)(3) in pertinent part by removing "highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open," leaving only "public roads[,]" and by removing the "free from nuisance" language. The legislature also added R.C. 2744.01(H), defining "public roads" to exclude shoulders, berms, rights-of-way, or traffic control devices, unless mandated by the Ohio manual of uniform traffic control devices.

{¶17} In discussing the 2003 amendments to R.C. Chapter 2744, the Ohio Supreme Court noted that the legislature's amendment of R.C. 2744.02(B)(3) "was not whimsy, but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, ¶ 26. In addition, the Supreme Court reasoned that the adoption of R.C. 2744.01(H) demonstrated an effort by the legislature to limit the definition of "public roads," so as to focus "solely on the roadway itself." *Id.* at ¶ 29.

{¶18} The Ohio Supreme Court again confronted the public-roads exception in *Baker,* 147 Ohio St.3d 51, 2016-Ohio-1566, 60 N.E.3d 1214. The question before the court in *Baker* was whether a four-to-five inch drop-off between the edge of the paved road to the berm—the "edge drop"—was part of the public road under R.C. 2744.02(B)(3). In a plurality opinion, the court began by determining whether the edge drop at the limit of the roadway is part of the "berm" or "shoulder." The court defined "berm" as " 'the shoulder of a road.' " *Id.* at ¶ 21, citing *Lucchesi v. Fischer*, 179 Ohio App.3d 317, 2008-Ohio-5934, 901 N.E.2d 849 (12th Dist.), quoting

*Webster's Third New International Dictionary* 206 (1993). The court defined "shoulder" as " 'either edge of a roadway' " and " 'the part of a roadway outside of the traveled way on which vehicles may be parked in an emergency.' " *Baker*, 147 Ohio St.3d 51, 2016-Ohio-1566, 60 N.E.3d 1214, at ¶ 21, citing *Lucchesi*, quoting *Webster's Third New International Dictionary* 206 (1993). The court applied the plain meaning of the words berm and shoulder to determine that the edge drop must be considered part of the berm or shoulder and not the public road. *Baker* at ¶ 23.

{¶19} In this case, the curb is a vertical, raised concrete structure at the edge of the paved road. Much like the Ohio Supreme Court determined that the edge drop from the roadway to the berm is part of the berm or shoulder, and not part of the public road, we determine that the raised edge or curb is part of the berm or shoulder and not part of the public road. *See id.* at ¶ 21. Our holding is consistent with the legislature's limitation of the definition of "public roads" to "focus[] solely on the roadway itself." *See Howard*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, at ¶ 29; R.C. 2744.01(H).

{¶20} Because we determine that the curb upon which Mauntel sustained her injury is not part of the "public roads" for purposes of the exception to political-subdivision immunity in R.C. 2744.02(B)(3), the trial court erred in determining that R.C. 2744.02(B)(3) applies.

### III. CONCLUSION

{¶21} The parties agree that the city of Norwood is entitled to the general grant of political-subdivision immunity under R.C. 2744.02(A)(1). Because the curb is not part of the "public roads" for purposes of the exception to political-subdivision immunity in R.C. 2744.02(B)(3), and the parties agree that no other exception to

immunity applies, we hold that the trial court erred in denying Norwood's summary-judgment motion. Norwood's sole assignment of error is sustained, and we reverse the judgment of the trial court and remand the cause with instructions to enter judgment in favor of the city of Norwood.

Judgment reversed and cause remanded.

CUNNINGHAM, P.J., concurs.
MYERS, J., concurs in judgment only.

Please note:

The court has recorded its own entry on the date of the release of this opinion.