[Cite as *Cerri v. Clemson Excavating, Inc.*, 2019-Ohio-1161.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| KENNETH U. CERRI, JR., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-G-0162** |
| CLEMSON EXCAVATING, INC., | : | |
| Defendant, | : | |
| THE TOWNSHIP OF THOMPSON, et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 2015 P 000355.

Judgment: Affirmed.

*Carl P. Kasunic* and *David F. Neilsen,* Carl P. Kasunic Co., LPA, 4230 State Route 306, Building 1, Suite 300, Willoughby, OH 44094 (For Plaintiff-Appellee).

*Gregory A. Beck* and *Andrea K. Ziarko,* Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, OH 44720 (For Defendants-Appellants).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Thompson Township and Thompson Township Trustees Frank Sirna, Erwin Leffel, and Al Safick (collectively "Thompson"), appeal the decision of the Geauga County Court of Common Pleas denying Thompson's motion for summary judgment based on purported governmental immunity. Because we find there is a genuine issue of material fact, we affirm the trial court's judgment.

{¶2}   On April 27, 2013, appellee, Kenneth Cerri, and his friend, Nestor Bagliano, were riding their motorcycles on Burrows Road.  As they crested a hill, the pavement abruptly ended, and the road turned to gravel.  Mr. Bagliano reached the gravel first, recognized the hazard, and signaled to Mr. Cerri.  In his deposition, Mr. Bagliano testified he struggled but successfully maintained control of his motorcycle.  Mr. Cerri was not so fortunate; he lost control of his motorcycle, was ejected, and was injured as a result.

{¶3}   The record reflects that Burrows Road is located between Thompson and Montville Townships.  Pursuant to a 1989 agreement, Thompson and Montville share responsibility for maintenance of the road by assigning each township a section of the road for which they would be responsible.  In recent practice, however, the townships have shared the maintenance and costs of both sections depending on available funds; the townships' ability to perform the required maintenance; and the approval of their respective boards of trustees.

{¶4}   In 2012, the townships jointly desired to improve the "sight line" at the intersection of Burrows and Sidley Roads, which included paving a portion of Burrows Road, which to that point had always been a dirt and gravel road.  The townships expressed concerns about the cost, and ultimately the extent of the paving was scaled back due to limited funding.  There is conflicting evidence in the record as to whether Montville moved forward with this project against the advice of the Geauga County Engineer and Thompson.  Regardless, project bids were solicited, Clemson Excavating, Inc. won the bid on March 20, 2012, and completed the project October 11, 2012,

2

leaving the transition between pavement and gravel at the crest of the hill Mr. Cerri and Mr. Bagliano encountered in April 2013.

{¶5} Mr. Cerri filed a personal injury complaint against Thompson Township, the Thompson Township Board of Trustees, Montville Township, the Montville Township Board of Trustees, Clemson Excavating, Inc., Geauga County Engineers, the State of Ohio Public Works Commission, and the Ohio Department of Transportation. The claims against the latter two defendants were subsequently dismissed.

{¶6} Mr. Cerri's claim asserts the defendants were negligent in that, inter alia, the location of the transition from pavement to gravel is unsafe because drivers cannot see the transition with enough notice due to the hill, there is no "pavement ends" sign, the edge of the pavement is a two- to four-inch-deep drop-off, there is no reduction in the 55-mph speed limit, the gravel portion of the road contained irregularly-sized stone gravel pieces and the gravel road was negligently maintained. He also alleged that "defendants jointly and severally failed to maintain the roadway * * * in a reasonably safe condition for the motoring public and to keep its roadways in repair and free from nuisance or other hazardous conditions."

{¶7} In response to Mr. Cerri's complaint, Thompson filed an answer and a motion for summary judgment asserting the defense of governmental immunity set forth in R.C. 2744.01, et seq. The trial court entered judgment, in pertinent part, denying Thompson's motion.

{¶8} Thompson now appeals, assigning for our review two assignments of error. Thompson's first assignment of error asserts:

> {¶9} The trial court erred in denying Thompson Township's motion for summary judgment on the issue of political subdivision

3

immunity when the township did not fail to keep Burrows Road "in repair."

{¶10} Ordinarily, Civ.R. 54(B) requires that a trial court order that disposes of fewer than all claims against all parties include a determination that "there is no just reason for delay" for the order to be deemed a final, appealable order. However, R.C. 2744.02(C) provides an exception for "[a]n order that denies a political subdivision * * * the benefit of an alleged immunity from liability as provided under this chapter * * *," as is the case here. *Id.*

{¶11} Summary judgment is proper when the evidence shows "there is no genuine issue as to any material fact, * * * the moving party is entitled to judgment as a matter of law," and when the evidence is construed most strongly in the nonmoving party's favor "reasonable minds can come to but one conclusion" adverse to the nonmoving party. Civ.R 56(C).

{¶12} We review the trial court's decision to grant summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). *See also Cornelison v. Colosimo,* 11th Dist. Trumbull No. 2009-T-0099, 2010-Ohio-2527, ¶11 (reviewing de novo the trial court's denial of a motion for summary judgment based on governmental immunity). When reviewing a decision de novo, we "conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers,* 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶27.

{¶13} "A claim of sovereign immunity by a political subdivision requires the three-tiered analysis provided in R.C. Chapter 2744." *Baker v. Wayne Cty.*, 147 Ohio St.3d 51, 2016-Ohio-1566, ¶11. *See also Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, ¶7. The first tier is the general rule that a political subdivision

4

generally is "not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). *See also Lakota v. Ashtabula*, 11th Dist. Ashtabula No. 2015-A-0010, 2015-Ohio-3413, ¶22. "'Governmental functions' include '[t]he regulation of the use of, and the maintenance and repair of, roads, highways, [and] streets.'" *Id.*, quoting R.C. 2744.01(C)(2)(e). Here, there is no dispute that Thompson is a political subdivision operating in connection with a governmental function and thus we start with the premise that Thompson is immune.

{¶14} However, political subdivision immunity is not absolute, and the second tier looks to whether an exception to that immunity applies. Specifically at issue in this case is the exception set forth in R.C. 2744.02(B)(3), which currently states:

{¶15} Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads.

{¶16} Thompson states, "[f]or purposes of this case, consideration of this exception turns on proof that Cerri's alleged injury was 'caused' by the 'negligent failure to keep public roads in repair' or the 'negligent failure to remove obstructions from public roads.'" We agree with this premise. In support of its first assignment of error, Thompson argues (1) nothing in the record shows that the road was not in repair; (2) road design choices and construction decisions are discretionary and thus immune from liability; (3) placement of signs is discretionary and is immune from liability; (4) the definition of "public roads" excludes berms, shoulders, and rights-of-way and thus are

5

not part of the 2744.02(B)(3) exception to immunity; and (5) the 55-mph speed limit did not cause the road to be out of repair. While Mr. Cerri's complaint and subsequent pleadings did allege negligence in the design, signage, berm, culvert, and rights-of way, and speed limit, he also asserts that the road was improperly maintained. The distinction is important and determinative.

{¶17} We agree with Thompson that a political subdivision's road design, placement of signs, maintenance of berms, shoulders, and rights-of-way, and speed limits are not an exception of "in repair" or "obstruction" under R.C. 2744.02(B)(3). Thus, such designs and signage are immune from liability. *See* R.C. 2744.01(H) ("'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless * * * mandated by the Ohio manual of uniform traffic control devices"). However, this merely clarifies what "in repair" does not include. *See also Baker, supra* ¶23 (edge of pavement was not part of the public road); *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶33 (overgrown foliage in "devil strip" that purportedly obstructed drivers view of stop sign did not cause the road to be in disrepair); *Lovick v. Marion*, 43 Ohio St.2d 171, 172 (1975) (catch basin and sloping drain adjacent to roadway were not part of roadway defined by former statute); *Bartchak v. Columbia Twp.*, 9th Dist. Lorain No. 17CA011096, 2018-Ohio-2991, ¶6-9 (High speed limit and lack of "X", "RR", or "no-passing-zone" signage, and certain transverse lines around a railroad track did not constitute disrepair or obstruction); *Bonace v. Springfield Twp.*, 179 Ohio App.3d 736, 2008-Ohio-6364, at ¶29 (7th Dist.) ("'in repair' does not create a duty to change allegedly absurd designs such as extreme and unnecessary side slopes that were constructed (and recently reconstructed) into a road."); *Franks v. Lopez,* 69

6

Ohio St.3d 345, 349 (1994) (finding "defective design or construction or lack of signage" are discretionary functions immune from liability).

{¶18} To determine whether evidence shows a question of whether Burrows Road itself was "in repair," we must understand how "in repair" is defined. Since the Revised Code does not define "in repair" as used in R.C. 2744.02(B)(3), we consider its ordinary meaning.

{¶19} Thompson argues that we should interpret "in repair" in part based on *Pelletier,* as "the state of being in good or sound condition." *Pelletier, supra,* (analyzing whether a stop sign was in good repair when overhead foliage obstructed driver's view of sign). We note this definition does not necessarily exclude "failure to maintain" from the definition of "in repair."

{¶20} In the context of road condition, courts have defined "in repair" as "maintaining a road's condition after construction or reconstruction, for instance by fixing holes and crumbling pavement." *Bonace, supra,* at 743. *See also*, *Heckert v. Patrick*, 15 Ohio St.3d 402, 406 (1984); *Sanderbeck v. Medina*, 9th Dist. Medina No. 09CA0051-M, 2010-Ohio-3659, ¶7; *Emmerling v. Mahoning Cty. Bd. of Commrs.*, 7th Dist. Mahoning No. 15 MA 0165, 2017-Ohio-9066, ¶33. Thompson also cites this definition but concludes, "[t]here is no evidence the roadway surface had any deterioration, holes or crumbling pavement at the time of the accident." However, these were merely examples the court gave, which, logically, are more applicable to paved roads; disrepair in a gravel road may manifest differently. We would be remiss in our analysis to limit disrepair to holes or crumbling pavement.

**{¶21}** Other courts have also included maintenance as part of keeping roadways "in repair." *See Messenger v. Lorain Cty. Commrs.*, 9th Dist. Lorain No. 99CA007372, 2000 WL 1072401, *5 (Aug. 2, 2000), (once Township decided to have a gravel road, rather than a paved road, the "township had a duty to maintain the gravel road in proper repair and apply the gravel in a safe and reasonable manner" and therefore the "Township is not protected by governmental immunity in this instance"), citing *Fankhauser v. Mansfield*, 19 Ohio St.2d 102, (1969). *See also Rastaedt v. Youngstown*, 7th Dist. Mahoning No. 12 MA 82, 2013-Ohio-750, ¶14 (finding injury due to sewer system design immune from liability but injury as a result of City's failure to maintain the road not immune from liability).

**{¶22}** Finding then that negligent maintenance of a gravel road may fall within the narrow "in-repair" exception of R.C. 2744.02(B)(3), we next consider the record before us de novo to determine whether the evidence shows a question of material fact remains as to whether Burrows Road was negligently maintained.

**{¶23}** In support of his claim, Mr. Cerri's expert, Robert Burch, says, "Thompson Township Trustees failed to maintain Burrows Rd. in repair and free of obstructions," Thompson argues that Mr. Burch's report was "speculative and fraught with inadmissible legal conclusions * * * not based upon his on inspection or knowledge of Burrows Road". It further asserts, "[t]here is simply no evidence that the actions or inactions of the Township in any way caused Burrows Road to be out of repair * * *." Notably, however, Thompson does not assert that Burrows Road was regularly maintained. Upon review of the record, we conclude there is sufficient evidence to support a finding that Burrows Road was not in repair.

8

{¶24} Even if Mr. Cerri's expert report was excluded from consideration, we find there is sufficient evidence in the record to create a genuine issue of material fact as to whether Burrows Road was "in repair." During their depositions, both John Marsic, Montville Township trustee, and Erwin Leffel, Thompson Township trustee, stated it is normal for ruts, ripples, and potholes to occur on gravel roads and that a maintainer must be pulled on a regular basis to prevent this. However, the first mention of the maintainer being used on Burrows Road is in the Montville Township meeting minutes dated October 1, 2013, six months after Mr. Cerri's accident.

{¶25} Moreover, Shane Hajjar, civil engineer and deputy county engineer for Geauga County Engineer's Office, during his deposition, stated that the amount of aggregate that was present on Burrows Road at the end of the "sight improvement project" was not suitable for long-term use. Mr. Hajjar stated that the townships placed additional aggregate but neither he nor his office confirmed where on the road the aggregate was placed and whether it was satisfactory for long-term use.

{¶26} Joseph LaRosa, road supervisor for Thompson Township, during his deposition, stated that since the end of the construction project, he never ran a grader on Burrows Road. He further testified that Clemson removed a portion of the gravel from Burrows Road and moved to Montville Township leaving Burrows Road "in disrepair." When asked what he did to get the road back into repair, Mr. LaRosa stated he didn't do anything, but Montville had placed new gravel. The Montville meeting minutes suggest 40 tons of #4 gravel was placed on February 5, 2013, and that they expected Thompson to pay for half of that cost.

9

**{¶27}** There is conflicting evidence as to the condition of the road during the winter of late 2012 and early 2013. When deposed, Mr. Marsic, and city engineer for the city of Painesville, Leanne Exum, stated the road was "acceptable" and "safe." At a Montville Township Board of Trustees meeting February 19, 2013, the minutes reflect that "Burrows Rd. (east of Rt. 528) is holding pretty well." However, the Montville meeting minutes on December 4, 2012, state, "Thompson Road Department ditched Burrows Rd., west of Sidley to Route 528, on the south side. Burrows Rd., east of Sidley is getting muddy." On March 5, 2013, the Montville Township meeting minutes reflect:

> **{¶28}** Mr. Marsic reported that portion of Burrows road is holding now but feels that the worst is to come once the rainy season starts. Mrs. Holbert felt that we should meet with the county and Thompson to make sure we have a good agreement in place concerning that portion of Burrows Rd. Mr. Marsic is planning to attend Thompson's meeting on March 6, 2013.

**{¶29}** Furthermore, it is unclear which township was responsible for the maintenance and cost of Burrows Road and the record suggests both townships ceased maintenance expecting the other to handle it. The Montville Township Trustee meeting minutes state that Thompson was not responsive to requests to pay for part of maintenance or do any maintenance itself. On October 16, 2012, the meeting minutes state, "[t]he board is in agreement that Montville Township's responsibility on section C & D of Burrows Rd. is now finished." During a meeting held November 6, 2012, a concerned Montville resident asked that a "pavement ends" sign be placed on Burrows Road, but she was told to contact Thompson Township. On April 7, 2013, merely 20 days before Mr. Cerri's accident, Ben Smith, Thompson Township Trustee, sent an email to John Marsic and Frank Sirna, Montville Township Trustees, stating:

10

**{¶30}** Prior to the bid date for your Burrows Road Improvement Project, our board voiced its concern regarding the reprofiling of the eastern end of the project without provisions to stabilize and place an adequate thickness of new stone base. The minutes of the special meeting on February 25, 2012 summarize our discussions on the subject. We had made the request to reevaluate the plan for this area to avoid exactly what is happening now. The road is failing badly, and Montville is asking Thompson to help pay for the repairs. Since the decision to proceed was made by Montville, against the advice f the County Engineer and Thompson, we do not feel an obligation to invest in repairing the failing areas. We will agree to provide equipment and labor in conjunction with Montville, but not to purchase stone that should have been part of the improvement contract. When the roadway is returned to the serviceable condition that existed prior to the "improvements", we will continue to honor our standing agreement to split the cost of stone for normal maintenance.

**{¶31}** The minutes of the Montville and Thompson townships joint meeting held February 25, 2012, also reflect discussion about the importance of maintaining the gravel on Burrows Road but it is not clear from these meeting minutes which township would be responsible for that maintenance.

**{¶32}** What is clear, even without Mr. Burch's expert report, is that there is a genuine issue of material fact as to whether Burrows Road was being maintained. The record shows that each township expected the other township to participate in the maintenance of Burrows Road. Without maintenance, Trustees from both townships testified during deposition that ruts, ripples, and potholes would form. The record further reflects some stating the road was in a safe, acceptable condition and others stated the road was "failing badly." As such, we find that the record contains sufficient evidence of an issue of material fact for litigation as to whether the road was "in repair."

**{¶33}** Finally, we consider the third tier of the analysis, which requires that if any exception to immunity under R.C. 2744.02(B) applies, we must then determine whether

11

the political subdivision has a defense to liability under R.C. 2744.03. *Lakota*, at ¶9, citing *Colbert*. Thompson's argument here focuses on R.C. 2744.03(A)(3) and (5), which provide:

**{¶34}** (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

**{¶35}** * * *

**{¶36}** (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

**{¶37}** As earlier discussed, once a political subdivision decides to have a gravel road, its discretionary function is concluded, and it has a duty to maintain that road in repair. Thus, political subdivisions are not immune from claims for negligent roadway maintenance. *See Messenger, supra* at *5, citing *Fankhauser, supra,* at 109-10; *Rastaedt, supra* at ¶14. Thus, we find no defense under R.C. 2744.03 applicable here and Thompson's first assignment of error is not well taken.

**{¶38}** Appellants' second assignment of error asserts:

The trial court erred in denying Thompson Township's motion for summary judgment on the issue of political subdivision immunity when the plaintiff's accident was not caused by an obstruction.

**{¶39}** Thompson asserts there was no obstruction on Burrows Road. On this assignment of error, we agree. Obstruction is not defined by the statute, but the Supreme Court of Ohio has defined obstruction as used in R.C. 2744.02(B)(3) as "an obstacle that blocks or clogs the roadway and not merely a thing or condition that

12

hinders or impedes the use of the roadway or that may have the potential to do so." *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, ¶30 (Finding ice on the road that had formed after a fire department training exercise was not an obstruction under the current version of R.C. 2744.02(B)(3), noting that the result would have been different prior to the 2003 revisions). The Court determined that to rise to the level of obstruction, the road must block or clog the roadway. Mr. Cerri argues the gravel was abnormally large for use on a roadway. However, even if that were true and even if it hinders or impedes use of the roadway, there is no evidence it would block or clog the roadway. The record does not show Burrows Road was impassable. Indeed, Mr. Bagliano successfully navigated the road on a motorcycle just moments before Mr. Cerri's attempt. As the Court in *Howard* notes, the intent of the general Assembly in its 2003 revisions to R.C. 2744.02(B)(3) was to "impose a condition more demanding than a showing of 'nuisance' in order for a plaintiff to establish an exception to immunity." *Id.* at ¶29. Thus, we find there is not enough evidence in the record to demonstrate Burrows Road had an obstruction.

**{¶40}** Regardless, R.C. 2744.02(B)(3) creates separate exceptions for injuries or losses caused by the "negligent failure to keep public roads in repair" and "negligent failure to remove obstructions from public roads." *Id.* "The terms "in repair" and "obstructions" exist separately under R.C. 2744.02(B)(3) and provide two separate, independent bases for precluding statutory immunity with respect to public roads." *Todd v. Cleveland*, 8th Dist. Cuyahoga No. 98333, 2013-Ohio-101, ¶14 (finding the city could be liable for an injury caused by a hazardous pothole if it "was the result of the city's 'negligent failure to keep public roads in repair,' regardless of whether the pothole also

constituted an 'obstruction' within the meaning of R.C. 2744.02(B)(3)"), citing *Bonace, supra,* at ¶29, and *Crabtree v. Cook*, 10th Dist. Franklin No. 10AP-343, 2011-Ohio-5612, at ¶27 ("negligent failure to keep public roads in repair" is an alternative basis for liability and "imposes its own distinct duty of care upon the municipality"). Therefore, because the question of "in repair" alone is enough to defeat political subdivision immunity, a finding of no obstruction as defined by R.C. 2744.02(B)(3) does not save appellants' motion for summary judgment.

{¶41} In light of the foregoing analysis, we affirm the Judgment of the Geauga County Court of Common Pleas denying Thompson's motion for summary judgment.

THOMAS R. WRIGHT, P.J., concurs,

TIMOTHY P. CANNON, J., concurs with a Concurring Opinion.

_____

TIMOTHY P. CANNON, J., concurring.

{¶42} I concur with the majority opinion. I write separately to address Mr. Cerri's contention that Thompson has some liability with regard to matters within its discretion, such as whether to erect "pavement ends" signs and whether to reduce the speed limit from 55 m.p.h. I agree with Thompson that those decisions are within the discretion of the township and are protected, to some extent, under R.C. 2744.03(A)(3). However, the appropriate level of maintenance and repair must be judged in light of those decisions. In other words, it may be appropriate to use large rocks to level and fill holes

14

on a street that has warning signs and a low speed limit. The same may not be true for a street with no warning signs and a speed limit of 55 m.p.h.

{¶43} This principal is illustrated in case law cited by the majority: while the township has discretion on certain decisions and is immune under R.C. 2744.03(A)(3), the level of maintenance required to keep the roadway in repair will vary based on the discretionary decisions made therein. Ultimately, whether alleged defects are ones of design or improper maintenance is properly determined by a jury by considering the discretionary actions and the state of repair collectively.